Timothy R. CARNEY, Kathleen Carney, Michael Carbone and Lori Carbone, Plaintiffs-Appellants,

v.

Anthony J. MANTUANO, Defendant-Respondent.

Court of Appeals

*No. 95–2529. Submitted on briefs September 3, 1996.—Decided September 25, 1996.*

(Also reported in 554 N.W.2d 854.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Cletus R. Willems* and *Charles R. Shedlak* of *O'Connor & Willems, S.C.* of Kenosha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard J. Sankovitz* of *Whyte, Hirschboeck, Dudek, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   No court has imposed liability for securities fraud based upon a theory of misrepresentation without proof that the investor actually relied on the misrepresented information. We are satisfied that the legislature recognized this principle when it crafted Wisconsin's Blue Sky Laws and hold that our state law requires an investor

pursuing a theory of seller misrepresentation to establish reliance.

This case concerns an offering in the Landmark Limited Partnership. Its primary asset was a proposed (now failed) sports bar and restaurant located in Kenosha known as "The Lower Deck." The plaintiffs, who we refer to as the Investors, each purchased shares in this limited partnership and sued the named general partner and manager, Anthony J. Mantuano, seeking the return of their original investments when The Lower Deck closed. The Investors claimed that the offering memorandum misstated the degree to which Anthony would be involved with operations and that, in fact, his brother Eugene, who had little pertinent experience, secretly planned from the start to serve as the manager.

After a bench trial, the trial court granted judgment to Anthony. While the trial court agreed that the offering contained misstatements of fact, it also found that the Investors knew and accepted that Eugene, not Anthony, would fulfill the general partner role. The trial court thus reasoned that the Investors had not proven reliance on the misstatements made in the written offering.[1] The Investors appeal.

We first turn to the factual findings of the trial court and observe that neither party challenges any of these findings as being clearly erroneous. *See* § 805.17(2), STATS.

The Investors purchased their shares in the late summer of 1991. The primary purpose of the

---

[1] The trial court, however, did award judgment to investors who had purchased shares without any knowledge about Anthony's true degree of involvement with the restaurant. Anthony does not challenge this component of the trial court's judgment.

partnership was to open and operate The Lower Deck. The partnership was going to lease an entire building in Kenosha and sublease the upstairs space not used for The Lower Deck to a banquet facility that would be operated by Anthony.

The misstatements that the Investors premised their case on are contained in the written offering. We observe that a schedule to the offering, along with other portions, clearly names "Anthony J. Mantuano" as the "General Partner." The trial court also found that the Investors knew that Anthony was a successful restaurateur with properties in Kenosha and Chicago (namely, Mangia's, Spiaggio's and Tutaposto), suggesting that they might have relied on the value of Anthony's name when making their investment decision.

But the trial court also found that Anthony never intended to fulfill the role of general manager or become otherwise involved with the Landmark partnership. As a "favor" to his brother Eugene, Anthony permitted his name to be used on the offering. Eugene was behind the project from the beginning and always planned to serve as general partner and manager. However, because Eugene was concerned that he might lose this asset to his wife during an upcoming divorce, he kept his name off of the partnership agreement.

The trial court further found that Eugene discussed his plan to hide his involvement with the Investors. Based on these discussions, the trial court made the significant finding that the Investors knew that Eugene "was in charge right from the beginning."

The Lower Deck opened in the fall of 1991 and closed by June 1992. The Investors filed suit in March 1993 against Anthony, alleging that he engaged in

various forms of securities fraud and had breached his duties as general partner. The Investors subsequently narrowed their theory to the securities claims now before us.

We briefly outline the Blue Sky Laws on which the Investors rely. The subchapter prohibiting "Fraudulent Practices" provides:

> **Sales and purchases.** It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:
>
> (1) To employ any device, scheme or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Section 551.41, STATS. A related section provides investors with a civil remedy against a "person who offers or sells a security" in violation of the above law. Section 551.59(1)(a), STATS.

The statute establishing this civil remedy also contains a defense for sellers of securities; it states in pertinent part:

> A person who offers or sells a security in violation of s. 551.41(2) is not liable . . . if the purchaser knew of the untrue statement of a material fact . . . .

Section 551.59(1)(b), STATS. The interrelation of these statutes is at the heart of this case.

531

As a further aid to our analysis, we will also describe the parties' trial strategies. The Investors claimed that Anthony's conduct in making this offering violated all three subsections of § 551.41, STATS. They urged that Anthony's statement in the offering, that he would be the restaurant manager, was an "untrue statement of a material fact." *See* § 551.41(2). Moreover, they contended that Anthony's agreement to hide Eugene's involvement in the partnership, with the goal of fooling Eugene's wife during the upcoming divorce, was a "scheme" or "fraud" related to the sale of these securities. *See* §§ 551.41(1) and (3).

Anthony defended these claims with evidence that the Investors each knew that Anthony was involved in name only. Indeed, Anthony conceded during closing arguments that "there was a misrepresentation made in this case." Still, Anthony contended that the Investors "knew fully well that [Anthony] was not going to be involved" and argued that they therefore could not have legitimately relied on what was written in the offering.

We have now set the stage for the Investors' two appellate claims. First, they argue that the trial court erred when it ruled that Anthony's defense—that the Investors had not relied on his misstatements when making their investment decision—was available to him. Second, the Investors cite comparable federal securities laws and argue that they are entitled to a presumption that they relied on Anthony's misstatements and that the trial court erred because it did not give this presumption proper weight. Both issues are questions of law because they require us to determine if the trial court applied the appropriate legal standard. *See Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146-47 (1979).

The Investors cite to the language of § 551.59(1)(b), STATS., and the general construction of the above-outlined Blue Sky Laws to support their first claim. As noted above, Wisconsin's law establishes a defense for sellers who can prove that the allegedly defrauded investors in fact knew the truth concerning the alleged misstatements. *See id.* But since the language of this provision states that it applies when there is an alleged "violation of s. 551.41(2)," the Investors claim that the trial court erred when it applied this defense to this case. Because the trial court found, as a matter of fact, that Anthony had participated in a plan to defraud Eugene's wife, and because such fraud is seemingly prohibited by § 551.41(3), STATS., the Investors contend that Anthony could not rely on this defense when defending a claim under this subsection.

However, either way the Investors shape their claim—that Anthony made misstatements to them to induce purchases, or that Anthony made misstatements as part of a plan to defraud Eugene's wife—Anthony argues that their case boils down to the fact that *he made misstatements. See* § 551.41(2), STATS. And because the Investors' case is a misstatement case, they must meet his defense and prove that they did not know the truth regardless of the way that they wrote their pleading or argued their case.

Although Anthony has not identified Wisconsin case law, he buttresses this argument with federal case law regarding the analogous federal securities regulations. *See* 15 U.S.C.A. § 77q(a) (1981). This federal case law holds that a victim in an alleged misstatements case must show that he or she relied on the misstated information. *See, e.g., Basic, Inc. v.*

*Levinson*, 485 U.S. 224, 243 (1988).[2] Thus, he argues that Wisconsin law, which is comparable to the federal law, should follow the same standard. *See State v. Temby*, 108 Wis. 2d 521, 528, 528-29 n.1, 322 N.W.2d 522, 526 (Ct. App. 1982) (noting similarities between Wisconsin and federal securities laws).[3]

We agree with Anthony that a party bringing a securities fraud case under the Wisconsin Blue Sky Laws, which is grounded on an alleged misstatement by the seller, must be prepared to establish that he or she relied on the misstatement. Although the defense set out in § 551.59(1)(b), STATS., speaks to how the seller may defend such charges with proof that the purchaser "knew of the untrue statement," this defense, in essence, is the same as establishing "no reliance" on the misstatement under federal securities laws. *See Basic, Inc.*, 485 U.S. at 243. For if the purchaser knew that the seller's statement was untrue, as Wisconsin law describes, then this purchaser could not have legitimately "relied" on the statement, as federal law describes.

Seeing how this statutory defense simply codifies a general principle within securities law, we cannot accept the Investors' argument that this defense only applies in actions pleaded and argued as pure misrepresentation claims under § 551.41(2), STATS. Doing so would effectively nullify the defense set out in § 551.59(1)(b), STATS. If we so ruled, from this point on,

[2] *But see Astor Chauffeured Limousine v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1546 (7th Cir. 1990) (explaining that "reliance" is really a combination of materiality and causation).

[3] Federal securities-related case law is persuasive authority when interpreting comparable Wisconsin provisions. *See Gygi v. Guest*, 117 Wis. 2d 464, 467, 344 N.W.2d 214, 216 (Ct. App. 1984).

every investor would plead his or her case as a § 551.41(1) or (3) violation, even when the alleged "scheme" or "fraud" was rooted in the seller's misrepresentation, simply to foreclose the defending seller from being able to assert "knowledge of the truth" (or "no legitimate reliance") as a defense.

In this case, Anthony raised this defense when he claimed that the Investors knew he was not going to be involved despite what the offering said. Since he made this prima facie showing, the burden shifted and the Investors had to prove either that they did not know about his actual degree of involvement, or that they legitimately relied solely on what was printed in the offering. The trial court resolved this factual debate by concluding that the Investors knew Anthony was not involved and did not rely on the statements in the written offering. We see no error in the trial court's analysis.

Having concluded that the Investors were required to meet Anthony's defense (and failed in their efforts), we turn to their second claim. Here, they contend that they were entitled to a presumption of reliance because they had proven that there was a misstatement in the offering. They argue that the Supreme Court set out such a rule in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972). They further complain that the trial court erred because it failed to give this presumption any weight in its factual analysis.

We disagree. In *Affiliated Ute Citizens*, the Supreme Court did not remove the substantive element of reliance. Rather, the Court recognized the possible difficulties of *proving reliance* in cases where the seller had allegedly *failed to disclose* pertinent information. Thus, the Court permitted a presumption

of reliance in *that* class of cases. *See id.*; *see also Basic, Inc.*, 485 U.S. at 243 ("[W]e previously have dispensed with a requirement of positive proof of reliance, where a duty to disclose material information has been breached.").

This is not, however, a failure to disclose case. The Investors clearly premise their case on the misstatements made in the offering. The trial court, therefore, did not err when it failed to "presume" reliance and instead required the Investors to offer proof countering Anthony's defense that they knew all along that he was not going to be involved.[4]

In sum, our analysis of this state's Blue Sky Laws and the comparable federal legislation and interpretative case law reveals that Wisconsin securities regulation contains general prohibitions against fraudulent practices in the sale of securities, *see* § 551.41(1) and (3), STATS., and also has a provision (and a defense) specifically aimed at misrepresentation. *See* § 551.41(2) and 559.51(1)(b), STATS. Accordingly, when an investor pursues a misrepresentation theory, he or she must be prepared to meet the seller's defense that the investor did not legitimately rely on the alleged misstatements.

---

[4] Because we conclude that the Investors have failed to prove reliance, we can affirm the judgment without addressing Anthony's further claim that the Investors have failed to prove causation. *See generally Bastian v. Petren Resources Corp.*, 892 F.2d 680, 685-86 (7th Cir.) (describing role of "loss causation" in securities litigation), *cert. denied*, 496 U.S. 906 (1990); *see also State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

*By the Court.*—Judgment affirmed.