Herbert J. CUENE, Jr.,
Plaintiff-Respondent,

v.

Wallace J. HILLIARD,
Defendant-Appellant.†

Court of Appeals

*No. 2007AP124. Submitted on briefs January 29, 2008.*
*—Decided May 6, 2008.*

2008 WI App 85

(Also reported in 754 N.W.2d 509.)

† Petition to review denied 9/11/08.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Winston A. Ostrow* of *Godfrey & Kahn, S.C.* of Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Gilson* of *Kaftan, Van Egeren & Gilson, S.C.* of Green Bay.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Wallace Hilliard appeals a summary judgment awarding Herbert Cuene, Jr., damages for Hilliard's failure to disclose material facts in a securities sale. Hilliard contends summary judgment was inappropriate because Cuene did not prove reliance or causality, Hilliard was not required to disclose certain facts, and there are genuine issues of material fact as to the relevance of the omitted statements. We conclude reliance is not an element of Cuene's claim, causality is established, and Hilliard's omitted statements are relevant as a matter of law and were therefore required to be disclosed. Thus, we affirm the judgment.

## Background

¶ 2. Hilliard formed Florida Air Holdings, Inc., in March 2001, envisioning it as primarily a commuter airline operating in Florida. To operate as a commuter airline, the company needed a "Part 121" operating certificate from the United States Department of

510

Transportation. To obtain the Part 121 certificate, Florida Air purchased the bankrupt Sunrise Airlines, Inc., to operate as a Florida Air subsidiary. Hilliard intended to obtain Florida Air's Part 121 certificate by renewing Sunrise's suspended certificate.

¶ 3. The Department of Transportation tentatively approved Sunrise's Part 121 renewal on February 8, 2002, and issued an order to show cause. The renewal would be finalized unless, within fourteen days of the order, someone came forward with cause for the Department to delay or deny approval.

¶ 4. Hilliard also owned a company called Plane 1 Leasing Co., Inc., which owned and leased planes to other airlines. The Federal Aviation Administration had pending sanctions against Plane 1 for allegedly flying without proper authorization and informed the Department of the pending sanctions in response to the show cause order. On February 13, 2002, the Department declined to finalize Sunrise's Part 121 certificate and requested an explanation from Hilliard about the FAA's pending sanctions.[1]

¶ 5. Simultaneously, M&I Bank underwrote a $3.64 million loan to Florida Air for six airplanes intended to be the Florida Air fleet. M&I had liens on the planes and a personal guarantee from Hilliard securing the loan. Plane 1 and Huffman Aviation—another of Hilliard's companies—also had loans from M&I totaling $4 million.

¶ 6. No payments were made on the principal of Florida Air's loan and, by December 2001, the loan was

---

[1] Hilliard initially disputed the allegations, asserting the plane lessees had the appropriate certificates, but later stipulated to $285,000 in sanctions after the United States attorney filed suit in April 2004.

511

in default. An M&I representative informed Hilliard that the bank intended to terminate its relationship with him and his companies. By March 2002, all three companies were in default; Florida Air still owed M&I $3.64 million.

¶ 7. In March 2002, Hilliard and the three companies entered a forbearance agreement giving the companies until December 31, 2002, to obtain refinancing elsewhere. Florida Air was required to make interest-only payments until maturity on December 31 or until refinancing was achieved, and Hilliard was required to make a $360,000 cash payment. By June 2002, however, Florida Air was delinquent under the forbearance agreement.

¶ 8. In June 2002, Cuene attended a sales presentation soliciting investors in Florida Air. The sales materials, among other things, indicated that "Florida Air Holdings is Ready to fly," that Sunrise anticipated government approval "in the very near future" and that "all the pieces are in place for a successful launch of Sunrise Air."

¶ 9. Cuene entered a subscription agreement to purchase stock in Florida Air on July 3, 2002. On July 10, the Department of Transportation withdrew Sunrise's Part 121 approval entirely. On July 12, Cuene wired a $50,000 payment for his stock purchase. Florida Air never became a commuter airline as anticipated, although it did operate as a charter airline.

¶ 10. In June 2005, Cuene sued Hilliard, alleging multiple claims, including violations of Wis. Stat. § 551.41(2).[2] That statute states:

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]

Specifically, Cuene complained Hilliard failed to disclose the problems with the FAA and Department of Transportation, along with Sunrise and Florida Air's "substantial liabilities" and misrepresented that Florida Air was "ready to fly."

¶ 11. The court granted Cuene's summary judgment motion, finding Hilliard's misrepresentations and omissions were so obviously important to an investor that reasonable minds could not differ on the question of materiality. The court therefore concluded Hilliard had violated WIS. STAT. § 551.41(2) and was liable to Cuene for damages under WIS. STAT. § 551.59(1)(a).[3] Hilliard appeals.

### Discussion

¶ 12. We review summary judgments de novo, using the same methodology as the circuit court. *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶ 8, 292 Wis. 2d 212, 713 N.W.2d 661. We first examine the moving papers and documents in support of the motion to determine whether the moving party has made a prima facie case. *Kraemer Bros. v. United States Fire*

---

[3] WISCONSIN STAT. § 551.59(1)(a) states, in relevant part: "Any person who offers or sells a security in violation of ... [WIS. STAT. §] 551.41 ... is liable to the person purchasing the security from him or her."

*Ins. Co.*, 89 Wis. 2d 555, 566, 278 N.W.2d 857 (1979). If the submissions supporting the motion make a prima facie case for judgment, we examine the submissions in opposition. *See id.* at 567. To defeat the motion for summary judgment, the opposing party must set forth facts demonstrating a genuine issue for trial. *Id.* If the material presented on the motion is subject to conflicting interpretations, summary judgment is improper. *See id.*

### I. Whether Reliance is An Element

¶ 13. Hilliard contends the circuit court's grant of summary judgment was improper because Cuene failed to prove reliance in the same way that a common law misrepresentation claim requires proof of reliance. Hilliard relies on *Carney v. Mantuano*, 204 Wis. 2d 527, 554 N.W.2d 854 (Ct. App. 1996), which states that no court "has imposed liability for securities fraud based upon a theory of misrepresentation without proof that the investor actually relied on the misrepresented information." *Id.* at 528.

¶ 14. Hilliard's reliance on *Carney* is misplaced for two reasons. First, as quoted by Hilliard, *Carney* contradicts a supreme court holding that although a common law fraud claim requires the plaintiff to show reliance, when the claim is brought under the statutory scheme, "[t]here is no similar reliance requirement in [Wis. Stat.] Chapter 551 . . . ." *Esser Distrib. Co. v. Steidl*, 149 Wis. 2d 64, 70, 437 N.W.2d 884 (1989). In this case, Cuene bases his complaint on the statutory violations and remedies.

¶ 15. Hilliard argues that *Carney* is the more recent pronouncement, but this later-in-time rule only applies when supreme court decisions conflict with

themselves. *Spacesaver Corp. v. Wisconsin DOR*, 140 Wis. 2d 498, 502, 410 N.W.2d 646 (Ct. App. 1987). To the extent that a supreme court holding conflicts with a court of appeals holding, we follow the supreme court's pronouncement. *Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 238, 552 N.W.2d 440 (Ct. App. 1996).

¶ 16. Second, although the circuit court noted certain misrepresentations in its decision, we conclude that this case can be decided strictly on the basis of the omissions mentioned by the court—specifically, the failure to disclose the loan defaults and forbearance agreement as well as the regulatory problems with Plane 1. To this end, *Carney* actually recognizes a presumption of reliance in failure to disclose cases, noting the United States Supreme Court "recognized the possible difficulties of *proving reliance* in cases where the seller had allegedly *failed to disclose* pertinent information. Thus, the Court permitted a presumption of reliance in *that* class of cases." *Carney*, 204 Wis. 2d at 535–36 (emphasis in original). *Carney*, however, was not a failure to disclose case.

¶ 17. Moreover, despite the language Hilliard quoted, the *Carney* court actually recognized that the reliance element amounts to an affirmative defense under Wisconsin's statutory cause of action. WISCONSIN STAT. § 551.59(1)(b) states: "A person who offers or sells a security in violation of [WIS. STAT.] s. 551.41 (2) is not liable . . . if the purchaser knew of the untrue statement of a material fact or omission of a statement of a material fact . . . ." The *Carney* court wrote that "this defense, in essence, is the same as establishing 'no reliance' on the misstatement" and the plaintiff therefore "must be prepared to establish that he or she relied on the misstatement." *Carney*, 204 Wis. 2d at 534.

515

¶ 18. Thus, Cuene was not required to prove reliance as an element of his Wis. Stat. § 551.41(2) claim, as reliance may be presumed in an omissions case. Indeed, positive proof of reliance in such a case is unnecessary. *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988).[4] Because the court concluded Hilliard could not establish the affirmative defense under Wis. Stat. § 551.59(1)(b), it properly concluded Cuene did not need to demonstrate reliance on Hilliard's omissions.

## II. Causal Connection

¶ 19. In a classic misrepresentation case, a plaintiff must be able to show "the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc.*, 485 U.S. at 243. Reliance is one way to establish this connection, *id.*, but if there is no reliance element, as is the case here, the causal connection must be established some other way. *See id.*

¶ 20. Here, the court concluded the privity requirement—the fact that a violator is only liable to the purchaser—satisfied the causal connection. Hilliard argues this is error, asserting privity does not demon-

---

[4] Wisconsin Stat. § 551.41 is nearly identical to Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5 (2008)). *See Colonial Bank & Trust Co. v. American Bankshares Corp.*, 478 F.Supp. 1186, 1189 (E.D. Wis. 1979). Thus, federal case law dealing with the federal version of the rule is persuasive authority. *See State v. Evans*, 2000 WI App 178, ¶ 8 n.2, 238 Wis. 2d 411, 617 N.W.2d 220 ("[W]here a state rule mirrors the federal rule, we consider federal cases interpreting the rule to be persuasive authority.").

strate causation. However, the "obligation to disclose and [the] withholding of a material fact establish the requisite element of causation in fact." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 154 (1972).

¶ 21. Moreover, *Basic Inc.* dealt with Securities and Exchange Commission Rule 10b-5 and, although Wisconsin securities law is based on the federal rules, there is one important distinction. Wisconsin provides civil recourse through WIS. STAT. § 551.59(1); the federal cause of action is only implied. *See Basic Inc.*, 485 U.S. at 230–31. In Wisconsin, then, the causal connection is also "defined" by statute: a person who offers or sells a security in violation of WIS. STAT. § 551.41 is liable to the purchaser. In other words, the causal connection is established when a statutory violation is established.

## III. Whether and Which Facts Must Be Disclosed

¶ 22. Hilliard makes two additional arguments, sufficiently related to combine for discussion. First, he claims that the circuit court erroneously concluded that WIS. STAT. § 551.41(2) requires a seller to disclose every possible fact. Second, Hilliard contends there is a genuine issue of fact as to whether facts he failed to disclose are material.

¶ 23. Statutory interpretation presents us with a question of law. *Hutson v. State of Wis. Pers. Comm'n*, 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212. To reiterate, WIS. STAT. § 551.41(2) says it is unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

517

¶ 24. We agree with Hilliard that the statute does not require disclosure of every possible fact under every possible circumstance. If the legislature required all material facts be disclosed every time, the statute would deem it unlawful to "make any untrue statement of a material fact or to omit to state a material fact" and nothing more. Thus, the legislature clearly envisioned that some facts, even material and relevant ones, would not always need to be disclosed. Indeed, the affirmative defense of Wis. Stat. § 551.59(1)(b) arguably means a seller need not disclose facts a buyer already knows.

¶ 25. But we do not agree with Hilliard that the court required "disclosure of all material facts under all circumstances." Rather, the court observed that the statutory and case law imply that an "investor has a right to accurate information, which he may rely on completely or ignore as he pleases." The court then proceeded to consider whether Hilliard's omissions here were material and, therefore, necessary to be disclosed.

¶ 26. Materiality is measured by an objective standard; a fact finder assesses whether the omitted fact would have made a difference to a reasonable investor's decision to invest. *State v. Johnson*, 2002 WI App 224, ¶ 21, 257 Wis. 2d 736, 652 N.W.2d 642. However, "if the established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality[,]' " then materiality may be resolved on summary judgment as a matter of law. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (citation omitted).

¶ 27. Hilliard does not dispute that he failed to disclose the status of Sunrise's Part 121 approval and issues with Plane 1, or that he failed to disclose the

defaulted loans and forbearance agreement with M&I Bank. Rather, he challenges only their legal significance.

¶ 28. As to Sunrise's Part 121 approval, Hilliard asserts he represented approval was imminent, clearly meaning approval was not yet granted. Hilliard's representation as imminent, while technically indicating approval had not been given, does not aid his argument. Imminent means "ready to take place." WEBSTER'S THIRD NEW INT'L DICTIONARY 1130 (1994). However, in February 2002, the Department of Transportation suspended its plans to approve the Part 121 application. Thus, in June 2002, when the sales presentation to investors occurred, it would not have been fair to characterize approval as "ready to take place." Indeed, in July 2002, two days before Cuene paid for his shares of Florida Air, the Department withdrew approval for the Part 121 certificate entirely.

¶ 29. Hilliard's omission of his problems with the FAA, Plane 1, and Sunrise's Part 121 approval made his representation of imminence misleading. We think it evident that a regulatory agency's reluctance, delay, or postponement of previously anticipated, mandatory approval would be important to a prospective buyer's business decision. Indeed, the court observed that Sunrise "could not get off the ground" without Part 121 approval. While Hilliard points out that the airline was still flying charter service under a valid Part 135 certificate, the presentation to investors was that Sunrise would be a commuter, not charter, airline. Information about a possible failure to obtain commuter authorization would be necessary for an investor to determine whether, should the approval be withheld, investment in a charter-only airline would nevertheless be prudent.

¶ 30. Hilliard's omission about his banking troubles is even more clearly material. "Surely, the materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge." *Securities & Exch. Comm'n v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980). A prospective purchaser would undoubtedly be interested to know the company in which he might invest defaulted not once but twice on multimillion-dollar loans, requiring a cash bailout from the founder, and was in forbearance only long enough to find a new lender, as the original lender no longer wished to have the company's business.

¶ 31. The court properly concluded the omitted factors were material and disclosure was necessary under WIS. STAT. § 551.41(2). Accordingly, the court properly concluded Hilliard was liable to Cuene under WIS. STAT. § 551.59(1)(a).

*By the Court.*—Judgment affirmed.