# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP875-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Ryan M. Muth, |
| |         Defendant-Appellant-Cross-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 257,932 N.W.2d 186
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | July 7, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 1, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Washington |
|   JUDGE: | Todd K. Martens |

JUSTICES:

ROGGENSACK, C.J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER, J., joined as to Parts II.A., B. and D., except for ¶¶58-60, and in which KELLY, J., joined as to Parts II.A., B., and D. DALLET, J., filed a concurring opinion, in which ANN WALSH BRADLEY and REBECCA GRASSL BRADLEY, JJ., joined, and in which ZIEGLER, J., joined as to ¶¶63-70 and ¶¶72-78. KELLY, J., filed an opinion concurring in part and dissenting in part, in which HAGEDORN, J., joined as to Parts I. and II. HAGEDORN, J., filed a dissenting opinion.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Hannah S. Jurss*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Hannah S. Jurss*.

For the defendant-appellant-cross-petitioner, there were briefs filed by *Andrew Mishlove* and *Mishlove & Stuckert, LLC*, Glendale. There was an oral argument by *Andrew Mishlove*.

**2020 WI 65**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP875-CR
(L.C. No. 2016CF85)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

     Plaintiff-Respondent-Petitioner,

  v.

Ryan M. Muth,

     Defendant-Appellant-Cross-Petitioner.

**FILED**

**JUL 7, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

ROGGENSACK, C.J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER, J., joined as to Parts II.A., B. and D., except for ¶¶58-60, and in which KELLY, J., joined as to Parts II.A., B., and D. DALLET, J., filed a concurring opinion, in which ANN WALSH BRADLEY and REBECCA GRASSL BRADLEY, JJ., joined, and in which ZIEGLER, J., joined as to ¶¶63-70 and ¶¶72-78. KELLY, J., filed an opinion concurring in part and dissenting in part, in which HAGEDORN, J., joined as to Parts I. and II. HAGEDORN, J., filed a dissenting opinion.

---

REVIEW of a decision of the Court of Appeals. *Affirmed in part and reversed in part.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. We review an unpublished decision of the court of appeals,[1] which affirmed in part the circuit court's[2] order that Ryan M. Muth pay restitution to the victims of his crime. Muth had argued that a civil settlement precluded the restitution order. The court of appeals reversed in part and remanded with directions to reduce the amount of restitution because the amount included income lost as a result of the spouses of Muth's victims missing work due to Muth's criminal conduct.

¶2 We agree with the court of appeals that the civil settlement did not preclude the circuit court from ordering restitution. Restitution is not a cause of action but a sanction for criminal conduct owned by the State; as such, victims cannot unilaterally terminate the State's interest in making them whole, rehabilitating the offender and deterring criminal conduct. However, the court of appeals erred by reversing in part and remanding with directions to reduce the amount of restitution. Wisconsin, as the State argued, is a marital property state; therefore, a victim suffers actual pecuniary damages when his or her spouse does not work because the victim is a member of the marital community that is affected by the loss of income. We conclude that the circuit court's restitution order was a reasonable exercise of discretion under the applicable law and

---

[1] State v. Muth, No. 2018AP875-CR, unpublished slip op. (Wis. Ct. App. June 6, 2019) (per curiam).

[2] The Honorable Todd K. Martens of Washington County presided.

facts presented. Accordingly, we affirm in part and reverse in part the court of appeals decision.

## I. BACKGROUND

¶3 In March 2016, Muth drove drunk and collided with T.K.'s vehicle, which resulted in T.K.'s death. In April 2016, Muth and his insurance company reached a civil settlement with T.K.'s three adult children, H.M., K.M. and R.K. It stated, in part:

> [H.M., K.M. and R.K.] for and in consideration of the sum of One Hundred Thousand and 00/100 Dollars ($100,000), the receipt whereof is hereby acknowledged, do hereby for myself, my heirs, executors, administrators, successors and assigns and any and all other persons, firms, employers, corporations, associations, or partnerships release, acquit and forever discharge Ryan Muth and Progressive Artisan & Truckers Casualty Insurance Company, of and from any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of wages, expenses, hospital and medical expenses, accrued or unaccrued claims for loss of consortium, loss of support or affection, loss of society and companionship on account of or in any way growing out of, any and all known and unknown personal injuries and damages resulting from an automobile accident . . . .

The civil settlement did not enumerate what part of the $100,000 was to cover special damages and what part was to cover general damages, instead purporting to be a release from all liability. Each child received one-third of the $100,000.

¶4 In October 2016, Muth pled no contest to one count of homicide by intoxicated use of a vehicle with one or more prior operating-while-intoxicated offenses. The circuit court sentenced Muth to 13 years of initial confinement followed by 13 years of extended supervision.

¶5 In February 2017, the circuit court held a hearing on restitution, at which the three children sought compensation for various expenses, such as funeral costs. Regarding the civil settlement, the circuit court asked questions to determine what type of an agreement accompanied the payment from the insurance company. The court asked H.M.:

Q. And so part of the settlement -- in your mind, what did the settlement compensate you for?

A. To me, it was basically to -- trying to -- I don't want to say replace my mom, but the $100,000 was towards her life. Like I say, I don't want to try to replace, but giving us money for replacing her, what they valued her life at was $100,000.

H.M.'s husband was allowed to speak, though he was not under oath. Muth did not object. H.M's husband stated:

[R.M.]: Your Honor, may I say a word?

THE COURT: Yes, sir. Your name?

[R.M.]: [R.M.]

I was the main contact for the insurance companies contacting me. We had to deal with Progressive and State Farm because of our vehicle. Progressive, the way it was explained to me it, was that it was towards any civil suit. I was not under the stipulation that it was for any of the state criminal case at all.

THE COURT: The $100,000 was to resolve any civil?

[R.M.]: Civil, right.

THE COURT: Okay.

[R.M.]: Basically what they explained to me is they could not come after Progressive, they did not want to pay anything over $100,000. That is what Progressive told me.

4

The circuit court ordered restitution to the adult children after considering the civil settlement and Muth's claim that the settlement precluded restitution.

¶6 The circuit court granted two requests that are the subject of this dispute. H.M. and K.M. requested $2,600 and $6,480, respectively, as compensation for income lost as a result of their spouses missing work due to Muth's criminal conduct. H.M.'s spouse missed 13 eight-hour shifts, and he earned $25 per hour. K.M.'s spouse missed 54 hours of work, and he earned $120 per hour. In K.M.'s household, her spouse was the sole source of income.

¶7 Muth filed a written objection to all restitution on two grounds. First, he argued that the civil settlement precluded restitution to the adult children. Specifically, he argued accord and satisfaction arose from the insurance company payment and barred liability for restitution. He also argued that setoff of their claimed damages against the insurance company payment would preclude restitution as well.[3] Second, he argued that T.K.'s sons-

---

[3] Accord and satisfaction is a common law contractual doctrine that may be applied if accord and satisfaction is in consideration for the settlement of all disputes between parties who have an interest in the controversy. Superior Builders, Inc. v. Large, 52 Wis. 2d 563, 565-66, 190 N.W.2d 901 (1971). "[A]ccord and satisfaction is an agreement to discharge an existing disputed claim and constitutes a defense to an action to enforce the claim." Parsons ex rel Cabaniss v. Am. Family Ins. Co., 2007 WI App 211, ¶9, 305 Wis. 2d 630, 740 N.W.2d 399 (citing Hoffman v. Ralston Purina Co., 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979)).

Setoff is also a common law doctrine that operates much like a counterclaim. For example, if a contract is substantially performed in the construction of a building, the contractor can

in-law were not victims, and, therefore, the circuit court should not have imposed restitution for their lost wages.

¶8 The State responded that restitution to the adult children was proper because Muth failed to prove that the children would receive a double recovery of special damages. The State further argued that H.M. and K.M. could be compensated for the income their spouses would have earned because Wisconsin is a marital property state.[4]

¶9 The circuit court upheld its restitution order. The circuit court acknowledged that victims are not permitted to receive a double recovery, but it rejected Muth's first argument because he had failed to prove that a double recovery of special damages would result from the imposition of restitution. The court explained that the civil settlement was "quite broad" and was "a release for both special damages and general damages." The circuit court found that H.M. and K.M. suffered both special and general damages and concluded that Muth did not present evidence "that particular amounts" of the civil settlement "were for general

---

collect the contract price less any setoff for such things as defective workmanship that the owner paid another contractor to correct. Klug & Smith Co. v. Sommer, 83 Wis. 2d 378, 385-86, 265 N.W.2d 269 (1978). Setoff also can be a contractual right. For example, an insurance policy may assert that payout under the policy will be subject to setoff by amounts paid by the tortfeasor. Marotz v. Hallman, 2007 WI 89, ¶20, 302 Wis. 2d 428, 734 N.W.2d 411.

[4] In a letter dated March 28, 2017, to the Washington County Circuit Court, the State argued that the amount of restitution should include the entirety of the spouses' lost wages because "Wisconsin is a marital property state."

damages and other specific amounts were for special damages." Therefore, the circuit court concluded that the civil settlement did not preclude restitution by providing a double recovery of special damages.

¶10 Furthermore, while the circuit court agreed that the sons-in-law were not victims, it reasoned that "[l]oss of wages to the husband is a loss of a marital asset.  If it damages him, it damages her."  Because no one disputed that H.M. and K.M. were victims, the circuit court reasoned that marital property law authorized the imposition of restitution for income lost by their spouses missing work due to Muth's criminal conduct.

¶11  Muth appealed.  In an unpublished per curiam decision, the court of appeals concluded that the civil settlement did not preclude restitution.  State v. Muth, No. 2018AP875-CR, unpublished slip op., ¶10 (Wis. Ct. App. June 6, 2019) (per curiam).  However, the court reversed in part and remanded because it concluded that marital property law was inapplicable to Wisconsin's restitution statute.  Id., ¶11.

¶12  The State petitioned for review, arguing that H.M. and K.M. could recover income lost as a result of their spouses missing work due to Muth's criminal conduct.  Muth cross-petitioned, arguing that the civil settlement precluded restitution to the children.  We granted the petition and cross-petition.  We affirm in part and reverse in part the decision of the court of appeals.

## II.  DISCUSSION

### A.  Standard of Review

7

¶13 This case requires us to review a circuit court's discretionary restitution order and to interpret statutes. Material facts are not in dispute.

¶14 When a defendant argues the amount of restitution should be "offset or reduced for any reason," we review the circuit court's restitution order for an erroneous exercise of discretion. State v. Longmire, 2004 WI App 90, ¶16, 272 Wis. 2d 759, 681 N.W.2d 534 (citing State v. Johnson, 2002 WI App 166, ¶7, 256 Wis. 2d 871, 649 N.W.2d 284); see State v. Wiskerchen, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730 (quoting State v. Fernandez, 2009 WI 29, ¶20, 316 Wis. 2d 598, 764 N.W.2d 509). We look for reasons to sustain a circuit court's discretionary decision. Wiskerchen, 385 Wis. 2d 120, ¶18 (quoting Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co., 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596). Therefore, if the circuit court grounded its decision in a logical interpretation of the facts and applied the correct legal standard, we will uphold it. Wiskerchen, 385 Wis. 2d 120, ¶18 (quoting State v. Behnke, 203 Wis. 2d 43, 58, 553 N.W.2d 265 (Ct. App. 1996); citing Fernandez, 316 Wis. 2d 598, ¶20).

¶15 Whether victims can recover income lost as a result of their spouses missing work due to Muth's criminal conduct turns on whether the circuit court had statutory authority to award restitution for that loss. See State v. Walters, 224 Wis. 2d 897, 901, 591 N.W.2d 874 (Ct. App. 1999). Stated otherwise, we determine whether the circuit court applied the correct law in exercising its discretion. The interpretation and application of statutes present questions of law that we review independently.

8

<u>Wiskerchen</u>, 385 Wis. 2d 120, ¶16 (quoting <u>Marder v. Bd. of Regents</u>, 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110); <u>Westmas v. Creekside Tree Serv., Inc.</u>, 2018 WI 12, ¶17, 379 Wis. 2d 471, 907 N.W.2d 68 (citing <u>Highland Manor Assoc. v. Bast</u>, 2003 WI 152, ¶8, 268 Wis. 2d 1, 672 N.W.2d 709).

B.  Restitution's Burden-Shifting Scheme

¶16  Wisconsin Stat. § 973.20 (2017-18)[5] is the restitution statute from which we begin our discussion.  Section 973.20(1r) provides, in relevant part:

> When imposing sentence or ordering probation for any crime . . . for which the defendant was convicted, the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing or, if the victim is deceased, to his or her estate, unless the court finds substantial reason not to do so and states the reason on the record.

§ 973.20(1r).  A victim has the initial burden to prove by a preponderance of the evidence that he or she sustained a loss as a result of a crime considered at sentencing.  <u>Wiskerchen</u>, 385 Wis. 2d 120, ¶25 (citing Wis. Stat. § 973.20(14)(a) (2015-16)).  Once this burden is satisfied, restitution is mandatory "unless the court finds substantial reason not to do so and states the reason on the record."  Wis. Stat. § 973.20(1r); see <u>Fernandez</u>, 316 Wis. 2d 598, ¶21.  Stated otherwise, the burden shifts to the defendant to explain why the circuit court should not impose

---

[5] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

restitution or why the amount thereof should be lower than the loss that was proved.

¶17 Wisconsin Stat. § 973.20(14)(b) is relevant here. It provides, in part that:

> The burden of demonstrating, by the preponderance of the evidence, the financial resources of the defendant, the present and future earning ability of the defendant and the needs and earning ability of the defendant's dependents is on the defendant. The defendant may assert any defense that he or she could raise in a civil action for the loss sought to be compensated.

Therefore, we turn to § 973.20(14)(b) and decisions in which § 973.20(14)(b) has been interpreted.

## C. The Civil Settlement

### 1. Wisconsin Stat. § 973.20(14)(b)

¶18 The first issue is whether the circuit court erroneously exercised its discretion in concluding that Muth did not prove either of his asserted defenses. The resolution of this issue begins with our interpretation of Wis. Stat. § 973.20(14)(b).

¶19 From our previous interpretations we have established two rules that we consider in light of the defenses to restitution in this case. First, defenses raised under § 973.20(14)(b) can go to the amount of restitution but not to whether there is liability for restitution. State v. Sweat, 208 Wis. 2d 409, 418, 561 N.W.2d 695 (1997) (concluding that "the restitution statute goes to establishing the amount of the loss sought to be compensated [and that d]efenses to liability are not relevant once restitution is available to crime victims"). Second, in order that a victim may be made whole but not receive double recoveries, a defendant "may

10

assert any defense, including accord and satisfaction or setoff, in the sentencing hearing." Huml v. Vlazny, 2006 WI 87, ¶22, 293 Wis. 2d 169, 716 N.W.2d 807 (so opining in reliance on Sweat even though Vlazmy did not challenge the restitution order but rather, challenged the unpaid amount that Huml sought to convert to a civil judgment). We also stated in Huml, while discussing accord and satisfaction, that "[o]nly if a circuit court first finds that enforcement of the restitution order would result in double recovery for the victim can a settlement agreement affect a circuit court's authority to enter or enforce a restitution order while a defendant remains on probation." Id., ¶37.

¶20 We determine statutory meaning from the words chosen by the legislature. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "If the words chosen for the statute exhibit a 'plain, clear statutory meaning,' without ambiguity, the statute is applied according to the plain meaning of the statutory terms." State v. Grunke, 2008 WI 82, ¶22, 311 Wis. 2d 439, 752 N.W.2d 769. Statutory purpose, gleaned from the statutory text, has been a helpful component in our prior interpretations. Wiskerchen, 385 Wis. 2d 120, ¶21. "Statutory purpose is important in discerning the plain meaning of a statute." Id. (quoting Westmas, 379 Wis. 2d 471, ¶19). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Wiskerchen, 385 Wis. 2d 120, ¶21 (citing Kalal, 271 Wis. 2d 633, ¶46).

11

"Therefore, in construing a statute, 'we favor a construction that fulfills the purpose of the statute over one that defeats statutory purpose.'" Wiskerchen, 385 Wis. 2d 120, ¶21 (quoting Westmas, 379 Wis. 2d 471, ¶19).

¶21 Wisconsin Stat. § 973.20 has multiple purposes. Primarily, it "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." Wiskerchen, 385 Wis. 2d 120, ¶22. Therefore, "Wisconsin courts have repeatedly held that 'restitution is the rule and not the exception.'" Id. (quoting State v. Canady, 2000 WI App 87, ¶8, 234 Wis. 2d 261, 610 N.W.2d 147). "[R]estitution [also] serves the purposes of punishment and rehabilitation of the defendant." Walters, 224 Wis. 2d at 904. In Huml, we confirmed the state's interest in restitution when we affirmed Walters and said, "It is true that restitution in a criminal case is a remedy that belongs to the state, not to the victim." Huml, 293 Wis. 2d 169, ¶44 (citing Walters, 224 Wis. 2d at 904). To explain further, "restitution is recognized as an effective rehabilitative penalty because it forces defendants to confront concretely——and take responsibility for——the harm they have inflicted, and it appears to offer a greater potential for deterrence." People v. Hall-Wilson, 505 N.E.2d 584, 585 (N.Y. 1987) (citing Kelly v. Robinson, 479 U.S. 36, 49 n.10 (1986); Note, Victim Restitution in the Criminal Process: A Procedural Analysis, 97 Harv. L. Rev. 931, 937–41 (1984)). However, we have concluded that "[t]ermination of probation [] signals the state's disavowal of any penal or

12

rehabilitative interests [in restitution]." Huml, 293 Wis. 2d 169, ¶44.

¶22 Statutory purpose informed our construction of Wis. Stat. § 973.20(14)(b) in Sweat, where we concluded that criminal statutes of limitations, not civil statutes of limitations, govern the propriety of imposing restitution. Sweat, 208 Wis. 2d at 428. Our interpretation was consistent with the purposes of the restitution statute: "(1) rehabilitating a defendant and (2) making all victims of his or her crimes whole to the extent reasonably possible." Id. at 423. We concluded that the rehabilitative goal of restitution would not be served if some criminals were not subject to restitution solely because a civil statute of limitations had run. Id. Similarly, the goal of victim compensation would not be served either. Id. at 422-23.

¶23 We further explained in Sweat that "the entire subject matter of the restitution statute goes to establishing the amount of the loss sought to be compensated." Id. at 418. With this understanding in mind, we concluded that "any defense" in Wis. Stat. § 973.20(14)(b) means any "defenses as to the amount of restitution, and not defenses to liability for restitutionary payments or acts." Id. So while we recognized that defendants "should be able to raise substantive defenses, such as mitigation, set-off, or accord and satisfaction," we stated these defenses "go to the measure or amount of total restitution." Id. at 424. We also stated that "[d]efenses to liability are not relevant once restitution is available to crime victims." Id. at 418.

13

¶24 To summarize, we distinguished between defenses that negate liability and defenses that lower the amount of restitution. We concluded that accord and satisfaction is a permissible defense but only as to "the measure or amount of total restitution." Id. at 424.

¶25 Sweat relied on statutory purpose but, importantly, also grounded its interpretation in the text of Wis. Stat. § 973.20. First, § 973.20(14)(b) contains multiple sentences. Its first sentence states, "[t]he burden of demonstrating, by the preponderance of the evidence, the financial resources of the defendant, the present and future earning ability of the defendant and the needs and earning ability of the defendant's dependents is on the defendant." Its second sentence provides that "[t]he defendant may assert any defense that he or she could raise in a civil action for the loss sought to be compensated." We explained that the sentences, read in context, demonstrate that "the phrase 'any defense' . . . is really a reference to defenses relating to the determination of the amount of loss to be compensated." Id. at 426–27. Second, "the phrase 'any defense that he or she could raise in a civil action' . . . is immediately followed by the phrase 'for the loss sought to be compensated.'" Id. at 427. "This placement seems to clearly indicate that the 'any defense' to which the statute refers means any defense to the amount of restitution ordered by the trial court, or 'any defense . . . for the loss sought to be compensated.'" Id.

¶26 Sweat is in accord with the concept that restitution is a part of our criminal justice system. Indeed, we made a point of

14

noting in Sweat that "[a] restitution hearing in a criminal proceeding is part of the criminal sentencing process, and serves the goals of the criminal justice system." Id. at 422. To further explain, restitution is located in Wis. Stat. ch. 973, "Sentencing." In this criminal context, restitution is not a cause of action but a sanction for criminal conduct.[6] Indeed, Sweat explained:

> [T]he state [is] the movant on behalf of the victims. The state is entitled to the criminal statute of limitations in enforcing restitution. The statute of limitations applies to the state and not to the victims of crimes because it is the state, and not the victims, which files criminal actions against the defendant. The State brought the action against the defendant in a timely manner, and has therefore met the statute of limitations.

Id. at 423.

---

[6] Restitution that results from crime commission is most often held to be a form of punishment under federal statutes and therefore subject to the Ex Post Facto Clause. 18 U.S.C. § 3663A(a)(1) (2012) provides that a federal sentencing court "shall order" restitution "in addition to, or in the case of a misdemeanor, in addition or in lieu of, any other penalty authorized by law." This language is similar to Wis. Stat. § 973.20(1r). Notably, in reliance on § 3663A(a)(1), many federal circuits concluded that restitution is a criminal sanction, as opposed to a civil remedy, and therefore, 3663A(a)(1) could not be imposed retrospectively without running afoul of the Ex Post Facto Clause. United States v. Williams, 128 F.3d 1239, 1241 (8th Cir. 1997); see also United States v. Edwards, 162 F.3d 87, 89 (3d Cir. 1998) (concluding that "most of the Courts of Appeal that have considered this question have found that the retrospective application of the [Mandatory Victims Restitution Act] violates the Ex Post Facto Clause because restitution imposed as a part of a defendant's sentence is criminal punishment, not a civil sanction." (Emphasis added.)). A minority of circuits conclude otherwise. See, e.g., United States v. Newman, 144 F.3d 531 (7th Cir. 1998).

15

¶27  As the court of appeals said in Walters:

> The basic premise that drives the decision in Sweat is that restitution in criminal cases is not a claim which a defendant owns, as a civil claim is.  It is a remedy that belongs to the State.

Walters, 224 Wis. 2d at 904.  Walters considered a civil settlement that purported to release the defendant from "all claims and damages."  Id. at 900.

¶28  In regard to accord and satisfaction, Walters concluded that it could not be a bar to liability for restitution but that "payments made pursuant to a civil case may have a role in the court's consideration of how much, if any, restitution is appropriate in a companion criminal proceeding."  Id. at 905 (emphasis added).  As we said in Sweat, "[d]efenses to liability are not relevant once restitution is available to crime victims."  Sweat, 208 Wis. 2d at 418.

¶29  In regard to setoff, Walters concluded that legislative objectives "will be best served by applying any setoff which a circuit court determines is appropriate to the total amount of special damages which the victim has sustained."  Walters, 224 Wis. 2d at 906.  However, because the record before the court showed that the victim had suffered both general and special damages and Walters provided no proof of the amount of special damages, he failed to meet his burden.  Id. at 909.  Therefore, Walters concluded that the circuit court had not erroneously

16

exercised its discretion by refusing to lower the amount of restitution because of the earlier settlement.  Id. at 908-09.[7]

¶30  In Huml, while confirming Walters, we said that "restitution in a criminal case is a remedy that belongs to the state, not to the victim."  Huml, 293 Wis. 2d 169, ¶44, (citing Walters, 224 Wis. 2d at 904).  We explained:

> The availability of accord and satisfaction and setoff as defenses to the amount of restitution a circuit court can order supports the idea that a victim can give up [their] right to enforce a judgment derived from a restitution order.  Of course, a settlement agreement does not necessarily prevent the circuit court from ordering restitution.  Walters, 224 Wis. 2d at 905, [] nor does it necessarily prevent enforcement of a restitution order during the term of probation.  Only if a circuit court first finds that enforcement of the restitution order would result in double recovery for the victim can a settlement agreement affect a circuit court's authority to enter or enforce a restitution order while a defendant remains on probation.

Huml, 293 Wis. 2d 169, ¶37 (emphasis added).

¶31  As one scholar explained, restitution is functionally equivalent to "a legally binding obligation between the defendant and the state."  Cortney E. Lollar, What Is Criminal Restitution?, 100 Iowa L. Rev. 93, 95 (2014).  Practically, restitution is analogous to a fine, the proceeds of which go to the victim.  Id. Indeed, similar to other sanctions, restitution is sometimes included in a deferred prosecution agreement or a plea agreement.

---

[7] Contrary to other writings in this case, Walters never said that the amount of a victim's damages could not be lowered based on proof of accord and satisfaction or setoff if double recovery was proved.  Rather, Walters relied on Sweat.  In addition, Walters was repeatedly affirmed by Huml.  Walters denied restitution solely because of a failure of proof.  See detailed discussion above.

17

Wis. Crime Victims Council, Crime Victim Restitution Collection in Wisconsin: A Guide to Help Victims of Crime Understand How Restitution Is Collected 10 (2014), https://www.doj.state.wi.us/sites/default/files/ocvs/navigating/Crime%20Victim%20Restitution%20Collection%20in%20Wisconsin%20Aug2014.pdf (last visited June 25 2020).

### 2. Application

¶32  To focus our discussion, we point out that "in addition to any other penalty authorized by law, [the court] shall order the defendant to make full or partial restitution under this section."  Wis. Stat. § 973.20(1r) (emphasis added).  Although restitution may take many forms, the restitution sought in this case includes only special damages.  There can be no award of general damages, which are precluded by Wis. Stat. § 973.20(5)(a).

¶33  Muth asserts the defense of accord and satisfaction, which, in a civil action, would be "a complete defense."  Walters, 224 Wis. 2d at 904.  Stated otherwise, in a civil action, accord and satisfaction "bars further liability when an offer of performance in exchange for full satisfaction of a disputed claim is accepted and the promised performance occurs."  Id.  Muth alternatively argues his restitution should be subject to setoff. Muth fails to recognize the significance of our precedent, which has thoroughly examined the language and purpose of Wis. Stat. § 973.20 and concluded that defenses to restitution must go to the amount thereof as opposed to liability.

¶34  The circuit court did not erroneously exercise its discretion in concluding that Muth did not prove either of his

asserted defenses. First, the circuit court concluded that the victims "have met their burden of proving that the losses were incurred." The court listed the restitution amount of $43,270.42 and then explained each loss that was contained within that amount. The circuit court also found that it had been presented with no evidence of the amount of special damages that were included within the $100,000 insurance settlement and that providing such evidence was the defendant's burden.

¶35 To explain, nothing intrinsic to the civil settlement provided evidence as to whether the adult children would receive a double recovery for the special damages they sustained. The civil settlement purportedly released Muth from claims for lost wages, a form of special damages, as well as claims for loss of consortium, loss of support of affection and loss of society and companionship, which are forms of general damages. The settlement does not enumerate what portion of the proceeds cover special damages. In this manner, the settlement terms are analogous to the settlement reviewed in Walters, wherein the court of appeals rejected similar defenses to a restitution order, which covered "all claims and damages" because the defendant did not prove the amount of special damages. Id. at 900. In addition, these special and general damages all arise from what T.K. would have provided had she not been killed in her accident with Muth. By contrast, the special damages that were awarded here arose from a crime and are not T.K's lost wages that were addressed in the settlement agreement.

19

¶36 Moreover, Muth did not provide extrinsic evidence to demonstrate what portion of the civil settlement, if any, covered as special damages the lost wages of the spouses of T.K.'s adult daughters. Extrinsic evidence confirms our understanding of the settlement agreement.[8] To explain, H.M.'s testimony and her husband's nontestimonial statements indicated that they did not agree that the civil settlement was meant to cover all damages. Rather, they said that the settlement was what the insurance company "valued her life at was $100,000."

¶37 Second, the circuit court applied the controlling and correct legal standards: (1) defenses raised under Wis. Stat. § 973.20(14)(b) can go to the amount of restitution but not liability; and (2) a civil settlement can lower the amount of restitution only if the defendant proves a victim would receive a double recovery of special damages. Huml, 293 Wis. 2d 169, ¶37. Therefore, Muth's accord and satisfaction defense did not reduce the amount of damages that the circuit court found the adult children proved because Muth made no showing that they would receive a double recovery from the restitution award. It was Muth's burden to prove that the special damages they sought had

---

[8] Extrinsic evidence cannot be used to contradict an unambiguous contract provision. Hoffman, 86 Wis. 2d at 454, ("Assent does not necessarily, however, require mental assent or a 'meeting of the minds.' The question is not the actual intent of the offeree, but his manifested intent." (Internal citations omitted.)).

Here, the settlement was for policy limits, $100,000, and is ambiguous in regard to what portion of that amount was paid for special damages.

already been paid by the insurance company settlement.  However, Muth provided no evidence about what portion of the settlement was for special damages or that the settlement included the lost wages of the spouses of T.K.'s adult daughters.  Accordingly, the circuit court's finding of fact that Muth did not meet his burden of proof in regard to accord and satisfaction is not clearly erroneous.

¶38 Similarly, Muth's setoff defense did not reduce restitution because he did not prove that a double recovery of special damages would result from the imposition of restitution. Stated otherwise, Muth did not prove "what part, if any" of the civil settlement "was paid for special damages" or that any portion of the "loss of wages" were for loss of wages of the spouses of T.K.'s adult daughters, rather than for T.K.'s loss of wages. Again, this was Muth's burden of proof.  Walters, 224 Wis. 2d at 908.  He did not meet it.  As the court of appeals stated, "Muth failed to present evidence on which the [circuit] court could have reasonably differentiated between general and specific damages in the payout under the settlement agreement."  Muth, No. 2018AP875-CR, ¶18.

¶39 The circuit court's rejection of Muth's defenses also was consistent with the statutory purpose of Wis. Stat. § 973.20. "Settlements of civil claims promote the public interest of resolving disputes informally and without litigation."  Walters, 224 Wis. 2d at 904 (citing Tower Ins. Co., Inc. v. Carpenter, 205 Wis. 2d 365, 371–72, 556 N.W.2d 384 (Ct. App. 1996)).  "However, the efficient resolution of civil disputes is not the policy on which restitution in a criminal proceeding is based.  Rather,

21

restitution serves the purposes of punishment and rehabilitation of the defendant, while seeking to make the victim of criminal acts whole in regard to the special damages sustained." Walters, 224 Wis. 2d at 904.

¶40  In our review of the circuit court's consideration of Muth's defenses, we applied Sweat's conclusion that "'any defense' [in Wis. Stat. § 973.20(4)(b)] . . . mean[s] only defenses as to the amount of restitution, and not defenses to liability for restitutionary payments or acts." Sweat, 208 Wis. 2d at 418. We also considered Huml, which was not a challenge to a restitution order such as we have here but rather, Huml arose when a restitution order was converted to a civil judgment. In Huml, we affirmed Walters, but also explained that questions presented in Walters and Huml were different in significant ways:

> It is true that restitution is a criminal case is a remedy that belongs to the state, not to the victim. Walters, 224 Wis. 2d at 904. Termination of probation, however, signals the state's disavowal of any penal or rehabilitative interests . . . . Consequently, it is consistent with Wisconsin precedent to allow a victim, in anticipation of the defendant completing probation, to release her right to enforce any judgment derived from unpaid restitution as part of a settlement agreement.

Huml, 293 Wis. 2d 169, ¶44 (emphasis added). We further explained that "there is considerable value in permitting a victim to release her interest in a judgment derived from a restitution order because it allows the victim to settle the case and replace an uncertain, future recovery with a certain, immediate recovery." Id., ¶47.[9]

---

[9] Some may confuse this statement in Huml v. Vlazny, 2006 WI 87, ¶44, 293 Wis. 2d 169, 716 N.W.2d 807, as impairing Sweat's and

22

¶41 In summary, the circuit court logically interpreted the facts and applied the correct legal standards. Therefore, it did not erroneously exercise its direction. Wiskerchen, 385 Wis. 2d 120, ¶18.

### D. Restitution and Marital Property

¶42 Turning to the next issue, Muth argues that the spouses of H.M. and K.M. are not victims for the sake of the restitution statute. The State does not dispute that in-laws are not victims; however, the State disputes the significance of this legal conclusion on the ground that harm to the marital communities is harm to H.M. and K.M. who are victims. The State's argument rests on Wisconsin's marital property law.

¶43 To explain, Wis. Stat. § 973.20(1r) entitles "victims" to restitution; however, § 973.20 does not define victim. Courts have looked to Wisconsin's crime victims' rights statute, Wis. Stat. § 950.02, for guidance. State v. Gribble, 2001 WI App 227, ¶¶71-74, 248 Wis. 2d 409, 636 N.W.2d 488. This approach is consistent with the canon in pari materia: "In construing the plain meaning of a particular statute, we may consider related statutes." State v. Harrison, 2020 WI 35, ¶35, 391 Wis. 2d 161,

---

Walters' conclusion that defenses raised during a restitution hearing lie to reduce only the amount of damages but not to extinguish liability for restitution. State v. Sweat, 208 Wis. 2d 409, 418, 561 N.W.2d 695 (1997); State v. Walters, 224 Wis. 2d 897, 905, 591 N.W.2d 874 (Ct. App. 1999). However, as we have explained, Huml arose when unpaid restitution was being converted to a civil judgment, while Sweat and Walters arose from restitution hearings at which restitution was ordered.

942 N.W.2d 310 (citing Winebow, Inc. v. Capitol-Husting Co., Inc., 2018 WI 60, ¶30, 381 Wis. 2d 732, 914 N.W.2d 631).

¶44 Wisconsin Stat. § 950.02(4)(a) provides:

"Victim" means any of the following:

1. A person against whom a crime has been committed.

2. If the person specified in subd. 1 is a child, a parent, guardian or legal custodian of the child.

3. If a person specified in subd.1 is physically or emotionally unable to exercise the rights granted under s. 950.04 or article I, section 9m, of the Wisconsin constitution, a person designated by the person specified in subd. 1. or a family member of the person specified in subd. 1.

4. If a person specified in subd. 1. is deceased, any of the following:

a. A family member of the person who is deceased.

b. A person who resided with the person who is deceased.

"Family member" is defined as "spouse, minor child, adult child, sibling, parent, or legal guardian." § 950.02(3).

¶45 The definition of family member in the victims' rights statute does not include in-laws, and, therefore, in-laws are not victims. Cf. Johnson, 256 Wis. 2d 871, ¶¶18-19 (explaining that stepparents are not victims under Wis. Stat. § 950.02(4)(a)4.).

¶46 Accordingly, the spouses of H.M. and K.M. cannot directly seek restitution. The State argues, however, that marital property law permits H.M. and K.M. to seek recovery on behalf of the marital community for income lost as a result of their spouses missing work due to Muth's criminal conduct.

24

## 1. Wisconsin Stat. § 766.31

¶47 Wisconsin is a marital property state. "[M]arital property is a form of community property." Wis. Stat. § 766.001(2). "Modeled after the Uniform Marital Property Act, the Marital Property Act transformed Wisconsin from a common law property state to a community property state." Gerczak v. Estate of Gerczak, 2005 WI App 168, ¶18, 285 Wis. 2d 397, 702 N.W.2d 72 "All property of spouses is presumed to be marital property." Wis. Stat. § 766.31(2). Under Wisconsin law, property of the marital community has a unitary concept of ownership "as being owned entirely by both spouses." In re Schmiedel, 236 B.R. 393, 400 (Bankr. E.D. Wis., 1999). Accordingly, "one spouse's income is marital property in which both spouses have a present undivided half interest. In any claim for unpaid wages, a non-wage earning spouse has the same interest in the potential income as the spouse who earned the wages." Gerczak, 285 Wis. 2d 397, ¶19; Wis. Stat. § 766.31(3).[10]

## 2. Application

¶48 By application of marital property law, the circuit court had the authority to exercise its discretion and impose restitution for income lost as a result of the spouses of Muth's victims missing work due to Muth's criminal conduct.[11]

---

[10] See also Jay E. Grenig & Nathan A. Fishbach, 1A Wisconsin Practice Series: Methods of Practice § 24:12 Marital Property (5th ed. updated Nov. 2019) ("Property classified as marital property is owned by both spouses equally.").

[11] As the circuit court explained, "Wisconsin is a marital property state. Income from a spouse is a marital asset. If [the

25

¶49 The State cites Wis. Stat. § 973.20(5)(a) and (b), which provide that when imposing restitution, a circuit court may require the defendant to:

> (a) Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.

> (b) Pay an amount equal to the income lost, and reasonable out-of-pocket expenses incurred, by the person against whom a crime considered at sentencing was committed resulting from the filing of charges or cooperating in the investigation and prosecution of the crime.

Notably, § 973.20(5)(a) is not limited to a particular subset of victims. However, § 973.20(5)(b) authorizes restitution only to "the person against whom a crime considered at sentencing was committed." In the case-at-hand, T.K. was the person against whom the crime was committed, and, therefore, H.M. and K.M., her adult daughters, are not entitled to restitution under § 973.20(5)(b).[12]

¶50 Turning to Wis. Stat. § 973.20(5)(a), the statutory issue presented is whether the spouses' income loss is a form of special damages that could be recovered in a civil action by H.M. and K.M. against Muth for his conduct. As already explained, special damages are "actual pecuniary losses." Holmgren, 229

---

loss] damages him, it damages her."

[12] Wisconsin Stat. § 950.02(4)(a)1. also uses the phrase "[a] person against whom a crime has been committed" to refer to those directly harmed by criminal conduct. The statute then defines other people that are also victims by their relationship to the person against whom the crime was committed.

26

Wis. 2d 358, 365, 559 N.W.2d 876 (1999). Lost wages are a type of special damages. § 973.20(3)(c).

¶51 As a representative of the marital community, a spouse can recover the full amount of income loss, not just his or her present undivided one-half interest. First, Wis. Stat. § 766.31(7)(d) and (f) provide that "recovery for personal injury" is "individual property" except for "the amount attributable to loss of income during marriage." Because income is presumed to be marital property, the amount of income recoverable is based on the harm inflicted on the marital community.

¶52 Second, Wis. Stat. § 766.31(7)(f) is a departure from the Uniform Marital Property Act, which influenced the drafting of Wisconsin's Marital Property Act. An explanation of the departure helps illustrate the meaning of § 766.31(7)(f):

> The Wisconsin change was chosen because it better reflects the principle of sharing during marriage and protects the non-injured spouse in cases in which the recovery becomes substantial income for a couple during marriage and because it reflects the common practice in Wisconsin of having the special verdict indicate the amount of lost earnings. The Wisconsin rule follows the usual classification rule developed in the community property states.

Lynn Adelman, Donald Hanaway & Mary Lou Munts, Departures from the Uniform Marital Property Act Contained in the Wisconsin Marital Property Act, 68 Marq. L. Rev. 390, 393 (1985). The non-injured spouse is unprotected if the injured spouse can recover only his or her present undivided one-half interest in the income loss. That is contrary to the remedial purpose of the statutory scheme.

27

¶53 And finally, appellate courts have long concluded that when the claim is for lost wages, "a non-wage earning spouse has the same interest in the potential income as the spouse who earned the wages." Gerczak, 285 Wis. 397, ¶19. Therefore, the victims, H.M. and K.M., could have sued Muth, on behalf of their marital communities, for the income loss by their husbands due to Muth's criminal conduct.[13] In such a civil suit, they would have the opportunity to recover because Muth's conduct was a "substantial factor" in causing the loss. Fischer v. Ganju, 168 Wis. 2d 834, 857, 485 N.W.2d 10 (1992) (explaining that Wisconsin courts employ substantial factor causation).

¶54 As the court of appeals has explained:

Before restitution can be ordered, a causal nexus must be established between the "crime considered at sentencing," and the disputed damage. In proving

---

[13] The court of appeals implied in a footnote that the State conceded that the restitution order should have compensated H.M. and K.M. for only one-half of the income lost as a result of their husbands missing work due to Muth's criminal conduct. Muth, No. 2018AP875-CR, ¶26 n.3. The State asserts that it never conceded this point. Indeed, its brief before the court of appeals appears to have argued that H.M. and K.M. could recover the full amount of their spouses' lost wages. The State's brief stated:

H.M. and K.M. testified at the hearing about restitution they sought for actual losses to them——income that, by law, belongs to them just as much as it belongs to their husbands.

If this is not "income lost" to H.M. and K.M., consider the reverse: Should H.M., for example, not be able to claim lost wages from her work because those wages really belong to her husband? Should she be able to claim half because her husband also has an undivided interest in half of her wages?

28

causation, a victim must show that the defendant's criminal activity was a "substantial factor" in causing damage.    The defendant's actions must be the "precipitating cause of the injury" and the harm must have resulted from "the natural consequence[s] of the action."

Canady, 234 Wis. 2d 261, ¶9 (internal citations omitted). Certainly, the husbands' loss of work due to assistance of their spouses was precipitated by Muth's criminal conduct and was a "natural consequence" of his actions.    Therefore, although restitution is not a civil claim that the children of T.K. are proceeding upon in this state-action for restitution, the wages lost meet the caveat described in Wis. Stat. § 973.20(5)(a) for potential recovery in a civil action.

¶55 The circuit court considered marital property law when the court exercised its discretion to award restitution for lost wages.  The court concluded that "loss of wages to the husband is a loss of a marital asset.  If it damages him, it damages her." In so doing, the circuit court applied the relevant law to the facts of record, and did not erroneously exercise its discretion in its restitution order.

¶56  Muth erroneously relies on Johnson.  There, a victim's stepfather sought restitution for lost wages under Wis. Stat. § 973.20(5)(b).  Johnson, 256 Wis. 2d 871, ¶3.  He "completed a restitution form" to do so.  Id.  The circuit court had permitted the stepfather to recover restitution for lost wages on the ground that the mother was a victim and Wisconsin is a marital property state.  Id., ¶23.  The court of appeals noted the State had not developed this argument on appeal and further stated that:

29

> [B]ecause there is no language in the restitution statute or in Wis. Stat. § 950.02(4)(a) suggesting that restitution be permitted through such an indirect route, we conclude that the restitution statute intended to limit the recovery of lost wages for attending court proceedings to the persons identified in Wis. Stat. § 973.20(5)(b).

Id.  Muth argues that these statements foreclose the State's marital property argument.

¶57  We disagree.  Muth fails to recognize that in Johnson, the stepfather directly asserted a claim for restitution of his lost wages under Wis. Stat. § 973.20(5)(b).  His spouse did not assert a community property claim under § 973.20(5)(a) as is presented here.  This distinction is significant because § 973.20(5)(a) and (b) present different legal theories under which a victim can recover.  As we explained above, § 973.20(5)(b) addresses expenses incurred "by the person against whom a crime considered at sentencing was committed."  The stepdaughter was the person against whom the crime was committed, not the stepfather.[14] Id., ¶22 (explaining that the stepfather was not a person against whom a crime was committed).  Here, H.M. and K.M., who are victims,

---

[14] Notably, the stepfather recovered for the cost of installing a security system in the home.  State v. Johnson, 2002 WI App 166, ¶31, 256 Wis. 2d 871, 649 N.W.2d 284.  That recovery was premised not on Wis. Stat. § 973.20(5)(a) or (b) but on (d).  Id., ¶20.  Wisconsin Stat. § 973.20(5)(d) provides that a restitution order may "[i]f justice so requires, reimburse any insurer, surety or other person who has compensated a victim for a loss otherwise compensable under this section."  The stepfather was an "other person."  Johnson, 256 Wis. 2d 871, ¶20.  Therefore, Johnson is not internally inconsistent.  It permitted recovery under § 973.20(5)(d) because an "other person" does not have to be a victim; it denied recovery under § 973.20(5)(b) because the stepfather was not "the person against whom a crime was committed." At no point does Johnson ever discuss § 973.20(5)(a).

sought restitution for income loss, which was marital property, as a result of their spouses missing work due to Muth's criminal conduct. In sum, the legal issues relating to lost wages in Johnson were presented differently than they were presented here. There is no need to withdraw language from Johnson.

¶58 In her concurrence, Justice Dallet raises the wrongful death statute. Muth did not raise it. No party has briefed it for this court. Notwithstanding all of the above, Justice Dallet is not deterred.

¶59 From the circuit court's order forward, this case has addressed whether the civil settlement agreement into which H.M. and K.M. entered precluded restitution for the crime Muth committed. Muth raised only accord and satisfaction and setoff as defenses to restitution.

¶60 Her concurrence has the potential to cause unnecessary confusion in subsequent wrongful death actions partially because there is no majority opinion of the court in State v. Muth to guide future litigation and partially because Justice Dallet misstates the law relating to wrongful death claims.

### III. CONCLUSION

¶61 We agree with the court of appeals that the civil settlement did not preclude the circuit court from ordering restitution. Restitution is not a cause of action but a sanction for criminal conduct owned by the State; as such, victims cannot unilaterally terminate the State's interest in making them whole, rehabilitating the offender and deterring criminal conduct. However, the court of appeals erred by reversing in part and

31

remanding with directions to reduce the amount of restitution. Wisconsin, as the State argued, is a marital property state; therefore, a victim suffers actual pecuniary damages when his or her spouse does not work because the victim is a member of the marital community that is affected by the loss of income. We conclude that the circuit court's restitution order was a reasonable exercise of discretion under the applicable law and facts presented. Accordingly, we affirm in part, reverse in part the court of appeals' decision.

*By the court*.—The decision of the court of appeals is affirmed in part, reversed in part.

¶62 REBECCA FRANK DALLET, J. *(concurring)*. I concur with the court's mandate but do not join the lead opinion's reasoning. The lead opinion's analysis on accord and satisfaction fails to meaningfully clarify State v. Walters, 224 Wis. 2d 897, 591 N.W.2d 874 (Ct. App. 1999). Additionally, while I would also uphold the circuit court's award of restitution for the lost wages of the victims' spouses, the lead opinion unnecessarily delves into marital property law and improperly shoehorns the grant of restitution into Wis. Stat. § 973.20(5)(a). Therefore, I respectfully concur.

¶63 I begin with a brief recitation of the facts. T.K. died in March 2016 after her vehicle was struck by Muth's vehicle. In April 2016, while the criminal case against Muth was pending, Muth and his insurance company reached a civil settlement with T.K.'s three adult children. The $100,000 settlement agreement generally released Muth from, among other things, all "claims, actions, causes of actions, demands, rights, damages, costs, loss of wages, expenses . . . ," resulting from the automobile accident.[1] The

_____

[1] The agreement provided that the three adult children:

for and in consideration of the sum of One Hundred Thousand and 00/100 Dollars ($100,000) . . . do hereby for myself, my heirs, executors, administrators, successors and assigns and any and all other persons, firms, employers, corporations, associations, or partnerships release, acquit and forever discharge Ryan Muth and Progressive Artisan & Truckers Casualty Insurance Company, of and any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of wages, expenses, hospital and medical expenses, accrued or unaccrued claims for loss of consortium, loss of support or affection, loss of society and

1

insurance settlement agreement did not enumerate what part of the $100,000 covered special damages and what part covered general damages, instead purporting to be a release from all liability. Each of T.K.'s three adult children received one-third of the insurance settlement.

¶64 In October 2016 Muth pled no contest to one count of homicide by intoxicated use of a vehicle as a second offense. Shortly thereafter, T.K.'s three adult children and T.K.'s brother sought restitution. Muth objected to the adult children's restitution request because of the insurance settlement agreement that they had signed.[2]

¶65 The circuit court held a hearing in February 2017 and heard testimony from T.K.'s three adult children and the spouses of the two adult daughters. Of import to this appeal, T.K.'s two adult daughters, H.M. and K.M., sought their spouses' lost wages related to T.K.'s death. H.M.'s husband missed 104 hours of work, where he earned $25 per hour, totaling $2,600. K.M.'s husband missed 54 hours of work, where he earned $120 per hour, totaling $6,480. In K.M.'s household, her spouse was the sole source of income. K.M. described the lost wages as follows:

> those wages were claimed [] because our husbands were there for support for us. And for my sister and myself, our husbands are the primary income in the family. I don't even work outside the home, so I would like to

companionship on account of or in any way growing out of, any and all known and unknown personal injuries and damages resulting from an automobile accident . . . .

[2] The circuit court's restitution order included an amount for T.K.'s brother, which was not challenged on appeal. T.K.'s brother was not a party to the insurance settlement agreement.

2

kind of consider those because that's [] we lost income that day regardless of whether it was my husband or myself that worked.

K.M.'s husband's lost wages were also referred to as work "he miss[ed] in order to fulfill obligations associated with [T.K.'s] death."

¶66 The circuit court set restitution for the adult children in the amount of $34,869.42. The restitution amount included an award to H.M. and K.M. for their spouses' lost wages.

¶67 The circuit court gave Muth "an opportunity to submit a brief on the issues related to restitution." Muth subsequently filed a motion raising the defenses of accord and satisfaction and setoff, and asserting that the adult daughters could not recover their spouses' lost wages because the spouses were not "victims" under Wis. Stat. § 950.02. The State filed a letter in March 2017 objecting to Muth's motion only as to K.M. The State asserted that because Wisconsin is a marital property state and K.M.'s husband is the sole provider for the family, "lost wages for Mr. M[.] are lost wages for" K.M. The State filed a second letter with the court in June 2017 explaining its position on setoff and accord and satisfaction, and concluded with: "it is the State's position that [H.M.] and [K.M.] are entitled to the loss of value to their respective household."

¶68 At a July 2017 hearing, the circuit court upheld its restitution order. As to Muth's setoff defense, the circuit court explained that the civil insurance settlement was "quite broad" and was "a release for both special damages and general damages." The circuit court found that H.M. and K.M. suffered both special and general damages and concluded that Muth did not present

3

"evidence or testimony that particular amounts of the settlement -- the $100,000 settlement were for general damages and other specific amounts were for special damages." Therefore, the circuit court concluded that Muth had failed to meet his burden in proving his setoff defense. Relying on Walters, 224 Wis. 2d 897, the circuit court also concluded that the defense of accord and satisfaction did not preclude a restitution order in a criminal proceeding. Therefore, the circuit court concluded that neither of Muth's defenses should be applied to reduce the restitution amount set at the February 2017 hearing.

¶69 The circuit court also rejected Muth's argument that because only K.M. and H.M. were "victims" under the statute, the lost wages of their spouses could not be recovered as restitution. The court reasoned:

> Wisconsin is a marital property state. Income from a spouse is a marital asset. Loss of wages to the husband is a loss of a marital asset. If it damages him, it damages her. So I find that it is appropriate to include spouse's lost wages in the special damages in a restitution order.

¶70 The court of appeals affirmed the circuit court's conclusion regarding setoff but did not address Muth's accord and satisfaction defense. State v. Muth, No. 2018AP875-CR, unpublished slip. op., ¶¶13-22 (Wis. Ct. App. June 6, 2019) (per curiam). The court of appeals reversed the circuit court's award of restitution for lost wages of the victims' spouses, citing State v. Johnson, 2002 WI App 166, 256 Wis. 2d 871, 649 N.W.2d 284. Id., ¶¶23-28. Muth and the State both petitioned this court for review, which the court granted.

4

¶71 The lead opinion concludes that Muth failed to meet his burden in presenting the defenses of accord and satisfaction and setoff, and that the circuit court properly awarded restitution for lost wages of the victims' spouses. Although I agree with these conclusions, I take issue with the lead opinion's explanation of how the defense of accord and satisfaction applies in the context of restitution and the rationale upholding the award of the spouses' lost wages as restitution.

## I. ACCORD AND SATISFACTION

¶72 Our statute on criminal restitution, Wis. Stat. § 973.20, says "the court . . . shall order the defendant to make full or partial restitution . . . to any victim of a crime[.]" § 973.20(1r). The circuit court has broad power to order restitution pursuant to § 973.20. Criminal restitution serves not only to make a victim whole, but also serves penal and rehabilitative purposes. See State v. Sweat, 208 Wis. 2d 409, 422, 561 N.W.2d 695 (1997) ("Restitution serves a dual purpose, making the victim whole and rehabilitating the defendant.").

¶73 Pursuant to Wis. Stat. § 973.20(14)(b), a defendant in a restitution proceeding may "assert any defense that he or she could raise in a civil action for the loss sought to be compensated." As our case law makes clear, "any defense" includes the defense of accord and satisfaction. See Huml v. Vlazny, 2006 WI 87, ¶37, 293 Wis. 2d 169, 716 N.W.2d 807; Sweat, 208 Wis. 2d at 424. Accord and satisfaction is defined as "[a]n agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the

5

debt by the substituted performance." Accord and Satisfaction, Black's Law Dictionary (11th ed. 2019).

¶74 A defendant on supervision may successfully assert accord and satisfaction as a defense to restitution if he or she can show that a restitution order will result in the victim obtaining double recovery. Huml, 293 Wis. 2d 169, ¶37.[3] In other words, a defendant must not only prove that there was an agreement to discharge a debt, but also the actual discharge of the debt by the substituted performance, such that recovery in a restitution proceeding would result in a victim receiving double recovery.[4]

¶75 In this case, Muth did not prove the defense of accord and satisfaction because he did not show that the entry of restitution would result in T.K.'s adult children receiving double

---

[3] Alternatively, a defendant may successfully prove accord and satisfaction to discharge an unpaid restitution order that has been reduced to a civil judgment after supervision of the defendant in the criminal case has been terminated. Huml v. Vlazny, 2006 WI 87, ¶44, 293 Wis. 2d 169, 716 N.W.2d 807. This is because the termination of supervision "signals the state's disavowal of any penal or rehabilitative interests" leaving only a civil debt. Id.

[4] Contrary to Justice Hagedorn's dissent, merely producing an insurance settlement agreement at a restitution hearing without proof that an order of restitution will result in double recovery to the victim is not enough to prove accord and satisfaction. See Justice Hagedorn's dissent, ¶131.

The defense of accord and satisfaction typically serves a civil litigant's interest in an efficient resolution to a civil dispute, but there are other interests involved in a criminal proceeding for restitution. See State v. Walters, 224 Wis. 2d 897, 904, 591 N.W.2d 874 (Ct. App. 1999). In addition to seeking to make the victim whole for special damages sustained, restitution also serves the purposes of punishment and rehabilitation of the defendant. See State v. Sweat, 208 Wis. 2d 409, 422, 561 N.W.2d 695 (1997).

6

recovery. The $100,000 insurance settlement agreement, divided into $33,333.33 for each of T.K.'s adult children, covered both special and general damages, and used broad, vague terms like "costs," "expenses," and "lost wages." There is no evidence that the losses compensated by the restitution granted to T.K.'s adult children had already been satisfied by payment from the insurance settlement. Muth ultimately provided no evidence to the circuit court that the $34,869.42 awarded to the adult children as restitution would result in them receiving double recovery for those special damages as a result of the money paid by the insurance settlement. See Huml, 293 Wis. 2d 169, ¶37.

¶76 I also write to draw attention to the confusion caused by the lead opinion in its analysis of accord and satisfaction. For example, the lead opinion relies upon extrinsic evidence regarding what T.K.'s daughter and her husband believed the insurance settlement agreement covered. See lead op., ¶36. However, this extrinsic evidence regarding the parties' subjective understanding of the insurance settlement agreement is irrelevant to establishing the defense of accord and satisfaction which "does not . . . require mental assent or a 'meeting of the minds.'" Hoffman v. Ralston Purina Co., 86 Wis. 2d 445, 454, 273 N.W.2d 214 (1979).

¶77 Additionally, as Justice Hagedorn observes in his dissent, the lead opinion "cites and quotes Walters, but never acknowledges its inconsistency with our cases and the statute itself." Justice Hagedorn's dissent, ¶128 n.5. The lead opinion never addresses the circuit court's broad conclusion, based on the

7

language in Walters, that civil defenses "which could be used as a complete bar to liability in a subsequent civil action," like accord and satisfaction, "do not preclude a restitution order in a criminal proceeding." See Walters, 224 Wis. 2d at 904-05. The lead opinion affirms this statement, directly at odds with our language in Sweat and Huml, by repeating that "in regard to accord and satisfaction, Walters concluded that it could not be a bar to liability for restitution." Lead op., ¶28. The confusion lies in the use of the term "liability" which originated in Sweat, was cited to in Walters, and now is perpetuated by the lead opinion. The language of Wis. Stat. § 973.20(14)(b), however, does not speak in terms of "liability" but rather in terms of "the loss sought to be compensated." When read in the context of the plain language of the statute, a settlement agreement may operate to prevent a circuit court from ordering restitution for the loss sought to be compensated. Huml, 293 Wis. 2d 169, ¶37.

¶78 To the extent that Walters has been interpreted to mean that the defense of accord and satisfaction can never prevent a circuit court from ordering restitution to compensate a victim for a loss caused by the defendant, that interpretation cannot stand. See Walters, 224 Wis. 2d at 904-05. As discussed above, the defense of accord and satisfaction is a defense to a circuit court's order of restitution when a defendant successfully proves that as a result of money received pursuant to a settlement agreement, the restitution order will result in double recovery to the victim. Ultimately, Muth failed to meet that burden here.

II. THE SPOUSES' LOST WAGES

8

¶79 Next, I address the appropriate framework in which to analyze the circuit court's award of restitution for lost wages of the victims' spouses. A restitution order involves a discretionary decision of the circuit court. State v. Wiskerchen, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730. This court will reverse a circuit court's discretionary decision "only if the trial court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts." Id. (quoting State v. Behnke, 203 Wis. 2d 43, 58, 553 N.W.2d 265 (Ct. App. 1996)). "We look for reasons to sustain a trial court's discretionary decision." Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co., 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596.

¶80 The lead opinion unnecessarily delves into an analysis of marital property law regarding ownership of a spouse's lost wages and concludes that T.K.'s adult daughters are entitled to recovery of those wages pursuant to Wis. Stat. § 973.20(5)(a). However, regardless of the outcome of a marital property analysis, lost wages of a spouse are not recoverable as restitution under subsection (5)(a).

¶81 Subsection (5)(a) provides that a restitution order may require a defendant to "[p]ay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." Restitution ordered pursuant to this subsection is limited to the type of special damages T.K.'s adult children could recover in a civil action against Muth for his conduct in colliding with T.K.'s

9

car causing her death. The lead opinion fails to point to any wrongful death case in Wisconsin that allows a family member of the deceased to recover their own lost wages, let alone the wages of that family member's spouses. Wisconsin's wrongful death statute permits the recovery of the deceased person's lost wages, not the lost wages of the deceased person's family members.[5] Accordingly, the lead opinion's assertion that T.K.'s adult daughters could have recovered their husbands' lost wages "in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing," is unsubstantiated, and the resulting restitution order cannot be upheld under § 973.20(5)(a).[6]

---

[5] One of Wisconsin's wrongful death statutes provides in part:

Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.

Wis. Stat. § 895.04(4). Although general damages for loss of society and companionship are recoverable under § 895.04(4), general damages are not recoverable pursuant to the language of Wis. Stat. § 973.20(5)(a).

[6] Wisconsin Stat. § 973.20(5)(b) allows recovery of lost wages and out of pocket expenses that resulted "from the filing of charges or cooperating in the investigation and prosecution of the crime." However, the lead opinion does not analyze the restitution award under subsection (5)(b), despite the State's reliance on this section, likely in an effort to avoid overruling State v. Johnson, 2002 WI App 166, 256 Wis. 2d 871, 649 N.W.2d 284.

10

¶82 The lead opinion creates further confusion by refusing to withdraw contradictory language in Johnson, 256 Wis. 2d 871, which the court of appeals in this case relied upon. See Muth, No. 2018AP875-CR, ¶¶26-28, ¶27 n.4. In reversing the circuit court's grant of restitution for lost wages, the court of appeals felt bound by the following language in Johnson:

> The circuit court held that W.L.'s lost wages were tantamount to a victim's lost wages or property due to the operation of Wisconsin's marital property laws. The State mentions, but does not develop this argument on appeal. Additionally, because there is no language in the restitution statute or in Wis. Stat. § 950.02(4)(a) suggesting that restitution be permitted through such an indirect route, we conclude that the restitution statute intended to limit the recovery of lost wages for attending court proceedings to the persons identified in Wis. Stat. § 973.20(5)(b).

Johnson, 256 Wis. 2d 871, ¶23 (emphasis added); see Muth, No. 2018AP875-CR, ¶26. Instead of simply withdrawing the contradictory language in Johnson as to an undeveloped argument, the lead opinion attempts to distinguish Johnson by declaring that the restitution order in this case falls under Wis. Stat. § 973.20(5)(a). As discussed above, this attempt fails. I would withdraw the final sentence of paragraph 23 in Johnson for the sake of clarity and to dispel any confusion moving forward.

¶83 Rather than wading into the unnecessary waters of marital property law, I would uphold the circuit court's award of restitution for the spouses' lost wages on the ground that the circuit court properly exercised its discretion under Wis. Stat. § 973.20(13)(a)5. This court has repeatedly affirmed that a broad reading of the restitution statute is necessary in light of the important public policy behind the statute. Section 973.20

11

"reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution," and that "restitution is the rule and not the exception." Wiskerchen, 385 Wis. 2d 120, ¶22 (quoted source omitted). Since the primary purpose of restitution is to compensate victims, courts are required to construe § 973.20 "broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct." State v. Madlock, 230 Wis. 2d 324, 332, 602 N.W.2d 104 (Ct. App. 1999) (quoted source omitted).

¶84 Wisconsin Stat. § 973.20(13)(a) authorizes the circuit court to consider five factors to determine whether to order restitution and the appropriate restitution amount. Subdivision 5 gives the circuit court the discretion to consider "[a]ny other factors which the court deems appropriate." § 973.20(13)(a)5. Admittedly, the circuit court's decision invoked marital property law. But, the record also reflects that the circuit court awarded T.K.'s adult daughters their spouses' lost wages because neither daughter worked full time and the circuit court considered the spouses' lost wages as a loss of the household. The circuit court heard testimony that the lost wages were incurred in supporting their wives and "fulfill[ing] obligations associated with [T.K.'s] death."

¶85 I conclude that the circuit court did not erroneously exercise its discretion in viewing the spouses' lost wages as lost household income and that it made a reasonable determination to include these amounts in the restitution award. These lost wages

12

were a damage to T.K.'s daughters that occurred solely as a result of Muth's criminal conduct; the circuit court did not erroneously exercise its discretion in awarding the lost wages under the broad grant of authority given in Wis. Stat. § 973.20(13)(a)5.[7]

¶86  For the foregoing reasons, I respectfully concur.

¶87  I am authorized to state that Justices ANN WALSH BRADLEY and REBECCA GRASSL BRADLEY join this concurrence and that Justice ZIEGLER joins ¶¶63-70 and ¶¶72-78 of this concurrence.

---

[7] This concurrence should not be read as giving circuit courts boundless discretion to order restitution relying solely on Wis. Stat. § 973.20(13)(a)5.  Rather, a circuit court ordering restitution must do so consistently with § 973.20 as a whole.  In this case, the circuit court did not erroneously exercise its discretion when it viewed the spouses' lost wages as a household loss and included these amounts in the restitution award.

13

¶88 DANIEL KELLY, J. *(concurring in part, dissenting in part).* I agree that Wis. Stat. § 973.20 allows victims to pursue their spouses' lost income as restitution in a criminal case because it qualifies as marital property, and so I join parts II.A., II.B., and II.D. of Chief Justice Roggensack's opinion. But the same statute that allows victims to pursue restitution says their claims are subject to "any defense that [the defendant] could raise in a civil action for the loss sought to be compensated." § 973.20(14)(b). Because K.M. and H.M. (the victims in this case) settled their claims against Mr. Muth,[1] he could have successfully raised the defense of "accord and satisfaction"[2] if they had pursued their claims in a civil action. The statute, therefore, says he may raise that defense here. Therefore, I dissent from the court's mandate that he may not.

## I. REMEDIES, CAUSES OF ACTION, AND THEIR OWNERS

¶89 A majority of this court says "accord and satisfaction" is not included in the category defined as "any defense that [the defendant] could raise in a civil action for the loss sought to be compensated." This is so, the Chief Justice says, because "[r]estitution is not a cause of action but a sanction for criminal conduct owned by the State." Lead op., ¶2. Therefore, according

---

[1] H.M and K.M sought restitution from Mr. Muth in the amount of $2,600 and $6,480 respectively specifically for their husbands' lost wages.

[2] Flambeau Prod. Corp. v. Honeywell Info. Sys., Inc., 116 Wis. 2d 95, 112, 341 N.W.2d 655 (1984) ("An 'accord and satisfaction' is an agreement to discharge an existing disputed claim; it constitutes a defense to an action to enforce the claim." (citation omitted)).

1

to a majority of the court, accord and satisfaction is not an available defense because victims cannot release the defendant from whatever it is the state is doing when it imposes a restitution order. Whether that is true depends on the relationship between restitution, causes of action, and those who own them. Once we know who owns the causes of action, we will also know who may release them and, consequently, whether Mr. Muth may raise accord and satisfaction as a defense in this case.

¶90 Let's start with the nature of restitution. The Chief Justice says it's not a cause of action, and that's certainly true. It's a remedy. Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002) ("'[R]estitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." (citation omitted, ellipses and insertions in original)); Harris v. Metro. Mall, 112 Wis. 2d 487, 496, 334 N.W.2d 519 (1983) ("The remedy of restitution is not limited to rescission cases."); Wisconsin Mut. Plate Glass Ins. Co. v. Guaranteed Bond Co., 218 Wis. 197, 202, 260 N.W. 484 (1935) ("The purpose of restitution as a remedy for breach is the restoration of the status quo ante as far as is practicable.").

¶91 Understanding that restitution is a remedy is critical because a remedy is simply the mechanism by which to operationalize a cause of action, and whoever owns the cause of action may release it. "A cause of action is distinguished from a remedy which is the means or method whereby the cause of action is effectuated."

2

Goetz v. State Farm Mut. Auto Ins. Co., 31 Wis. 2d 267, 273, 142 N.W.2d 804 (1966) (citation omitted); Tikalsky v. Friedman, 2019 WI 56, ¶15, 386 Wis. 2d 757, 928 N.W.2d 502, reconsideration denied, 2019 WI 89, 388 Wis. 2d 656, 933 N.W.2d 32; Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 146, 293 N.W.2d 897 (1980) ("[T]he remedy or relief sought should not be confused with the concept of cause of action. Whether compensatory damages, special damages, or punitive damages are sought as a matter of remedy or relief is immaterial to the cause of action itself.").

¶92 Just as there is no remedy without a cause of action, there is no cause of action without an owner. See, e.g., Rural Mut. Ins. Co. v. Lester Buildings, LLC, 2019 WI 70, ¶13, 387 Wis. 2d 414, 929 N.W.2d 180, reconsideration denied, 2019 WI 98, 389 Wis. 2d 34, 935 N.W.2d 681 ("'[T]ort liability' is the legal obligation or responsibility to another resulting from a civil wrong or injury for which a remedy may be obtained."); Id., ¶32, (Kelly, J., dissenting) ("The one with the right to a remedy is the one to whom the legal obligation is owed."); Traeger v. Sperberg, 256 Wis. 330, 333, 41 N.W.2d 214 (1950) ("The general rule followed in Wisconsin is that in an action for conversion the plaintiff may recover the value of the property at the time of the conversion plus interest to the date of the trial. However, it is universally recognized that the purpose of this rule is to compensate the plaintiff for the loss sustained because his property was taken." (citations omitted)); Venegas v. Mitchell, 495 U.S. 82, 88 (1990) ("A cause of action under § 1983 belongs 'to the injured individua[l.]'" (alteration in original)); see

also Pritzlaff v. Archdiocese of Milwaukee, 194 Wis. 2d 302, 315, 533 N.W.2d 780 (1995) ("A party has a present right to enforce a claim when the plaintiff has suffered actual damage, defined as harm that has already occurred or is reasonably certain to occur in the future."); Schultz v. Vick, 10 Wis. 2d 171, 174-75, 102 N.W.2d 272 (1960) ("The plaintiffs' cause of action arose when the collision[, the injury,] took place. The substantive rights of the parties came into being at that time."); Johnson v. Winstead, 900 F.3d 428, 434 (7th Cir. 2018), cert. denied, 139 S. Ct. 2776 (2019) (quoting Wallace v. Kato, 549 U.S. 384, 391 (2007) ("[T]he traditional common-law rule [is] that a 'tort cause of action accrues . . . when the wrongful act or omission results in damages.'").[3]

¶93 So, if restitution is a remedy, and remedies operationalize causes of action, and causes of action belong to someone, then the real work of the court was to identify the owner of the cause of action for which restitution was sought in this case, which would necessarily identify who has the authority to release the claim. If it is the state, then the lead opinion's

---

[3] The rule that causes of action belong to the persons wronged also shows up when we consider who has standing to pursue the cause. See, e.g., Krier v. Vilione, 2009 WI 45, ¶20, 317 Wis. 2d 288, 766 N.W.2d 517 ("'Standing' is a concept that restricts access to judicial remedy to those who have suffered some injury because of something that someone else has either done or not done." (quoted source omitted)); Marx v. Morris, 2019 WI 34, ¶75, 386 Wis. 2d 122, 925 N.W.2d 112 (Kelly, J., concurring in part, dissenting in part) reconsideration denied, 2019 WI 84, 388 Wis. 2d 652, 931 N.W.2d 538 ("A person has standing, and therefore owns a cause of action, only if he has been injured (or threatened with injury)[.]" (emphasis added; citations omitted)).

4

conclusion that the victims may not release Mr. Muth from his restitution obligation is correct. But it also would mean (as I explain below) that Wis. Stat. § 973.20(14)(b) would apply only when the state is the victim. On the other hand, if the victims own the cause of action that restitution is supposed to effectuate, then there is nothing to prevent them from releasing those claims, which would mean Mr. Muth could raise accord and satisfaction as a defense.

## II. WHO MAY SETTLE CAUSES OF ACTION?

¶94 There are two alternative paradigms by which to understand what Wis. Stat. § 973.20 says about who may release a cause of action remediable by restitution, each of which I will address in turn. The first requires that we dismantle the relationship between remedies, causes of action, and their owners. The second leaves the traditional relationship between those concepts intact, and applies the simple language of the statute. For the following reasons I think our responsibility is to follow the latter even if we prefer the policy results of the former.

### A. The Separation of Victims From Their Causes of Action

¶95 The Chief Justice says restitution is a "sanction for criminal conduct owned by the State." Lead op., ¶2. The statute, however, does not say this; the idea is, instead, the culmination of a line of cases in which we allowed the statute's goals to smother its actual text. We started down this path in State v. Sweat, 208 Wis. 2d 409, 561 N.W.2d 695 (1997), where we considered whether the "any defense" language meant that the defendant could assert a civil statute of limitations. After consulting the

5

legislative history and purpose of Wis. Stat. § 973.20, we concluded that the phrase "any defense" was ambiguous. Sweat, 208 Wis. 2d at 417. So we said "any defense" meant only those that relate to the amount of restitution, but not those comprising procedural bars. Id. at 418. The statute doesn't make this distinction, but we figured it was good policy because it would "serve[] the goals of the criminal justice system." Id. at 422.

¶96 The court of appeals took up our theme and extended it in State v. Walters, 224 Wis. 2d 897, 591 N.W.2d 874 (Ct. App. 1999). The Walters court observed that "restitution serves the purposes of punishment and rehabilitation of the defendant, while seeking to make the victim of criminal acts whole in regard to the special damages sustained." Id. at 904. To this it added its interpretation of our Sweat decision: "The basic premise that drives the decision in Sweat is that restitution in criminal cases is not a claim which a defendant owns, as a civil claim is. It is a remedy that belongs to the State." Id. But Sweat doesn't say that, nor does it conceptually support such a statement. In fact, Sweat doesn't mention the concept of ownership at all, much less as a driving premise. By the time Walters reached its conclusion, however, the claim definitively belonged to the state: "Because restitution is not a claim belonging to the victim which he or she can release, the settlement for [the victim's] claims arising out of the accident was not an absolute bar to the circuit court's consideration of restitution in this criminal case." 224 Wis. 2d at 909.

6

¶97 This issue came back to us in Huml v. Vlazny, 2006 WI 87, ¶44, 293 Wis. 2d 169, 716 N.W.2d 807, in which we said that "[i]t is true that restitution in a criminal case is a remedy that belongs to the state, not to the victim." (citing Walters, 224 Wis. 2d at 904). We provided no analysis to support that statement, and the only authority we cited was Walters, which based that proposition on something we didn't say in Sweat.[4] So much for the principle's provenance. Now to assess its effect.

¶98 If this truly is what the statute says, then Wis. Stat. § 973.20(14)(b) would have no application at all except when the state itself is the victim. This is true because § 973.20 does nothing to break the linkage between remedies and causes of action, or between causes of action and their owners. Therefore, the assertion that "restitution in a criminal case is a remedy that

---

[4] The lead opinion refers to federal cases interpreting the Mandatory Victims Restitution Act (18 U.S.C. § 3664A) ("MVRA") to support the proposition that restitution is a criminal sanction as opposed to a civil remedy. The MVRA does contain language similar to Wis. Stat. § 973.20, although it is not the same in at least one key respect——it contains no provision that the defendant may raise civil defenses against the victim's restitution claim in the criminal proceedings. While some federal courts interpret the MVRA as imposing a criminal sanction, see United States v. Williams, 128 F.3d 1239, 1241 (8th Cir. 1997), others (such as the 7th Circuit Court of Appeals) reject this idea. See United States v. Newman, 144 F.3d 531, 537 (7th Cir. 1998).

The Newman court characterized the Williams' analysis as "fundamentally flawed" and flatly stated that "[r]estitution is not 'punishment' within the meaning of the Ex Post Facto Clause." Id. at 538-39. So although there is some similarity between our restitution statute and the MVRA, analogizing to a federal statute regarding which there is a split amongst the circuits is probably not the most persuasive source of reasoning. However, for those interested in judging which of the circuits has the more compelling argument, Newman will reward your time well.

7

belongs to the state," lead op, ¶21 (quoting Huml, 293 Wis. 2d 169, ¶44), can only be true if the cause of action it operationalizes also belongs to the state (because a remedy is inextricably tied to the cause of action it is effectuating). As noted above, restitution is "the restoration of the status quo ante as far as is practicable," Wisconsin Mut., 218 Wis. at 202, so the person for whom it has its restoring effects must have been injured by an adverse change in that status. It is only that person who can have a cause of action for which restitution is an available remedy. This means that restitution can only belong to the state if the state suffered an adverse change in status. The natural consequence, therefore, would be that § 973.20 allows restitution only when the state is the victim. The other consequence is that what the Chief Justice says about the remedy is internally contradictory: "[R]estitution in a criminal case is a remedy that belongs to the state, not to the victim." Lead op, ¶21 (quoting Huml, 293 Wis. 2d 169, ¶44). The first clause means that restitution is available only when the state is the victim (because of the necessary remedy-claim-owner nexus), while the second clause says the state may not have restitution because restitution does not belong to the victim (the state). There is no squaring that circle.

¶99 The Chief Justice, of course, does not believe restitution is available only when the state is the victim. But the only way she can maintain her position that restitution "belongs to the state" and that victims other than the state are eligible for restitution is to break the remedy-claim-owner nexus.

8

That is to say, that paradigm won't work unless we believe that Wis. Stat. § 973.20 says a remedy can belong to someone who has not been injured (the state), thereby wresting its control from the cause of action's owner (the victim). And further, we must believe that the statute says the victim may not release the cause of action that restitution is supposed to vindicate so that the state may use the remedy for its own purposes. Thankfully, this bizarre relationship between remedies, claims, and owners appears to be entirely unique to our § 973.20 jurisprudence.

¶100 Let's remember, for a moment, why we contorted the otherwise uncontroversial relationship between these legal concepts. We are trying to decide whether "accord and satisfaction" is part of the category "any defense that he or she could raise in a civil action for the loss sought to be compensated." Wis. Stat. § 973.20(14)(b). Accord and satisfaction is, quite obviously, a defense Mr. Muth could successfully raise in a civil action against the losses for which the victims seek compensation in this case. So we had to figure out why "any defense" cannot include this defense. The only way we could accomplish that was to separate the victims from their remedies (and, in consequence, their causes of action), and turn them over to the state for safekeeping, thereby preventing victims from settling their claims on terms not approved by the state.[5]

---

[5] This, the lead opinion says, is desirable because: (1) it makes the victim whole; (2) it rehabilitates the offender; and (3) it deters criminal conduct. See lead op., ¶2. I agree that these are desirable benefits. I just don't believe we can let them dictate what the statute actually says.

9

The statute's natural reading, however, doesn't support any of that.[6]

## B. Restitution Belongs To The Victim

¶101 Everything the statute says about restitution is consistent with our traditional understanding of the remedy-claim-owner nexus. In fact, its salient command is a reaffirmation of that linkage:

> When imposing sentence or ordering probation for any crime . . . for which the defendant was convicted, the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section <u>to any victim</u> of a crime considered at sentencing or, if the victim is deceased, to his or her estate, unless the court finds substantial reason not to do so and states the reason on the record.

Wis. Stat. § 973.20(1r) (emphasis added). A "victim," within the meaning of the statute is "[a] person against whom a crime has

---

[6] The lead opinion points out that there are circumstances in which the defense of "accord and satisfaction" <u>could</u> be available to the defendant——just not in the Wis. Stat. § 973.20 restitution hearing. It reminds us that, in <u>Huml v. Vlazny</u>, we considered a victim's interest in settling a restitution claim that had been reduced to a civil judgment. We said there, and the Chief Justice repeats here, that "there is considerable value in permitting a victim to release her interest in a judgment derived from a restitution order because it allows the victim to settle the case and replace an uncertain, future recovery with a certain, immediate recovery." Lead op., ¶40 (quoting <u>Huml</u>, 293 Wis. 2d 169, ¶44). That's true. But there's no reason this is not just as true prior to the restitution hearing as after. In any event, whether the defense of accord and satisfaction is available and useful <u>after</u> the restitution hearing says nothing about whether it is a defense in the category of "any defenses" that the defendant may raise <u>at</u> the restitution hearing pursuant to § 973.20(14)(b).

10

been committed." Wis. Stat. § 950.02(4)(a)1.[7] The victim is, therefore, the injured person, and the statute directs restitution to that person. This is our classic remedy-claim-owner formulation.

¶102 The balance of the statute confirms that this is the operative relationship. At the sentencing hearing, the court must inquire into the amount of restitution the victim seeks——the victim, not the state. Wis. Stat. § 973.20(13)(c) ("The court . . . shall inquire of the district attorney regarding the amount of restitution, if any, that the victim claims." (emphasis added)). The lead opinion does not inquire into the amount the state believes will be effective in rehabilitating the defendant or deterring future criminal conduct. It asks the measure of the victim's injury because restitution effectuates the victim's claim. The statute also places the onus on victims to prove the amount of restitution owed to them. § 973.20(14)(a) ("The burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim as a result of a crime considered at sentencing is on the victim. The district attorney is not required to represent any victim unless the hearing is held at or prior to the sentencing proceeding or the court so orders." (emphasis added)). But if restitution is a "sanction for criminal conduct owned by the State," lead op., ¶2, why is it the victim's responsibility to prove how much sanction the state ought to levy against the defendant? Why would the district attorney ever have

---

[7] Under certain circumstances, a "victim" can also be someone who acts on behalf of the person against whom the crime was committed. See Wis. Stat. § 950.02(4)(a)2.-3.

need to represent the victim if the remedy/claim belongs to the state? The only answer is that restitution is not a sanction, but is instead a remedy for a cause of action owned by the victim. This is in accord with our recognition, just last term, that "[t]he primary purpose of Wis. Stat. § 973.20 is to compensate the victim." State v. Wiskerchen, 2019 WI 1, ¶22, 385 Wis. 2d 120, 921 N.W.2d 730 (citation omitted); see also State v. Storlie, 2002 WI App 163, ¶8, 256 Wis. 2d 500, 647 N.W.2d 926 ("We construe Wis. Stat. § 973.20 broadly to allow victims to recover their losses as a result of a defendant's criminal conduct."). There may be pedagogical and deterrent effects as well, but they are the subtext to the statute's textual purpose of creating a process within a criminal proceeding by which victims can recover what they would otherwise have to pursue in a civil case. Subtext should remain where it is, to wit, subordinate to the actual text.

¶103 The objective shared between the victims' civil actions and restitution proceedings in criminal cases is the key to making sense of Wis. Stat. § 973.20(14)(b). Defendants may raise civil defenses to victims' restitution claims precisely because both are aimed at the same objective: obtaining recovery for what the victim lost due to the defendants' crimes. If restitution is, instead, a "sanction," or "analogous to a fine," lead op., ¶¶2, 31, as the Chief Justice says, allowing defendants to raise civil defenses would be pointless because there are no civil defenses to sanctions or fines. This would also cross wires with respect to the person against whom the defendant may assert the defense. How does a defendant assert against the state a defense he has against

12

the victim? It would be senseless to use a defense to a victim's civil case against the state's attempt to impose a sanction or a fine-analog because the plaintiff is not the same.[8]

¶104 All of the statutory pieces line up, without one out of place, if we preserve the traditional remedy-claim-owner nexus. The defendant commits a crime against a victim, which gives rise to a cause of action belonging to the injured victim, not the state. The statute provides an avenue by which the victim, not the state, may pursue a remedy, which effectuates the victim's claim. Wis. Stat. § 973.20(1r) ("[T]he court . . . shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing[.]"). The responsibility for proving the amount of restitution owed belongs to the victim, not the state. § 973.20(14)(a) ("The burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim as a result of a crime considered at sentencing is on the victim."). The amount of restitution may be affected by how much the defendant has already paid the victim. § 973.20(8) ("Any restitution made by payment or community service shall be set off against any judgment in favor of the victim in a

---

[8] The lead opinion's characterization of restitution as a sanction or fine-analog is also difficult to square with the statutorily-imposed effect it has on a subsequent civil action: "Any restitution made by payment or community service shall be set off against any judgment in favor of the victim in a civil action arising out of the facts or events which were the basis for the restitution." Wis. Stat. § 973.20(8). If restitution is a sanction/fine belonging to the state, there is no discernible reason for reducing the victim's judgment in a subsequent civil action against the criminal defendant. But if restitution belongs to the victim, this makes perfect sense.

13

civil action arising out of the facts or events which were the basis for the restitution."); see also Huml, 293 Wis. 2d 169, ¶22 ("[B]efore a circuit court reduces any unpaid restitution to a civil judgment, the probationer may prove that the victim has already recovered damages from him that are the same as the damages covered by the restitution order. [Wis. Stat.] § 973.09(3)(b)."). And the restitution award goes to the victim, not the state. § 973.20(1r). All of this establishes that § 973.20 does nothing to break the remedy-claim-owner linkage. And that is why a defendant may assert "any defense" against the restitution claim he would have had if the victim had pursued his claim in a civil action—because it is the same person pursuing the same cause against the same malefactor. § 973.20(14)(b).

¶105 Therefore, when victims seek restitution from criminal defendants, the claims they assert belong to the victims, not the state. And because the claims belong to the victims, not only may they release them just like any other claim, they are the only ones who may release them. Having released their claims, victims would be subject to the accord and satisfaction defense if they attempted to assert the released claims in a civil action. Flambeau Prod. Corp. v. Honeywell Info. Sys., Inc., 116 Wis. 2d 95, 112, 341 N.W.2d 655 (1984) ("An 'accord and satisfaction' is an agreement to discharge an existing disputed claim; it constitutes a defense to an action to enforce the claim." (citation omitted)).

14

Accordingly, accord and satisfaction is one of the defenses a defendant may raise pursuant to Wis. Stat. § 973.20(14)(b).[9]

---

[9] Justice Dallet's concurrence confuses the defense of "accord and satisfaction" with "set-off." Justice Dallet's concurrence, ¶¶73-75. She says that to establish the former, "a defendant must not only prove that there was an agreement to discharge a debt, but also the actual discharge of the debt by the substituted performance, such that recovery in a restitution proceeding would result in a victim receiving double recovery." Id., ¶74. That's not accord and satisfaction, that's set-off.

> [Set-off] is the right which exists between two parties, each of whom under an independent contract owes an ascertained amount to the other, to set-off their respective debts by way of mutual deduction, so that in any action brought for the larger debt the residue only, after deduction, may be recovered. The right of set-off is a common-law right, which belongs to every creditor, to apply unappropriated monies of the debtor, in his or her hands, in extinguishment of debts due to him or her. It allows parties that owe mutual debts to each other to assert amounts owed, subtract one from the other, and pay only the balance.

80 C.J.S. Set-off and Counterclaim § 3 (footnotes omitted). Setoff measures the amount paid against the amount owed and ensures the former does not exceed the latter so that the obligor does not receive a double-recovery.

Accord and satisfaction, on the other hand, is not concerned with how much a debtor pays on a claim, it is concerned with its extinguishment:

> An "accord and satisfaction" is an agreement to discharge an existing disputed claim, whether the claim be one arising in contract, tort, or otherwise. An "accord and satisfaction" constitutes a defense to an action to enforce the claim.

> Ordinary contract principles apply in determining whether an agreement of "accord and satisfaction" is reached. . . . There must be expressions sufficient to make the creditor understand or to make it unreasonable for him not to understand that the performance is offered in full satisfaction of the claim.

15

¶106 Mr. Muth did, in fact, raise the defense, and provided a copy of the settlement agreement. It says, in pertinent part, that in exchange for the settlement amount H.M. and K.M.

> acquit and forever discharge Ryan Muth and Progressive Artisan & Truckers Casualty Insurance Company, of and from any and all claims, actions, causes of actions, demands, rights damages, costs, loss of wages, expenses, hospital and medical expenses, accrued or unaccrued claims for loss of consortium, loss of support or affection, loss of society and companionship on account of or in any way growing out of, any and all known and unknown personal injuries and damages resulting from an automobile accident which occurred on or about March 6, 2016 . . . .

The Chief Justice, however, says "H.M.'s testimony and her husband's nontestimonial statements indicated that they did not agree that the civil settlement was meant to cover all damages." Lead op., ¶36. With the greatest of respect, and with apologies for the frankness of this statement, H.M. and her husband may have subjectively believed the settlement was not meant to cover all damages, but it did. The language of the settlement agreement unequivocally releases the claims they made in the restitution proceeding in exchange for the settlement payment. Therefore, the defense of accord and satisfaction was available to Mr. Muth.

### III. CONCLUSION

¶107 The remedy-claim-owner linkage has not been disturbed by Wis. Stat. § 973.20, so victims may release claims whose remedies include restitution. Because accord and satisfaction is one of

_____

Hoffman v. Ralston Purina Co., 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979) (citations omitted). So to the extent Justice Dallet tries to make "accord and satisfaction" patrol how much an obligee pays an obligor, she's using the wrong tool.

16

the "any defenses" encompassed by § 973.20(14)(b), criminal defendants may raise it against claims asserted by victims in the restitution proceedings. Therefore, I join parts II.A., II.B., and II.D. of the lead opinion. I do not join part II.C because I believe that Mr. Muth should have been allowed to raise "accord and satisfaction" as a defense to the restitution sought in this case.

¶108 I am authorized to state that Justice BRIAN HAGEDORN joins parts I and II of this opinion.

17

¶109 BRIAN HAGEDORN, J. *(dissenting).* The text of a statute——not its purpose——is the law. The freedom circuit courts possess to make discretionary decisions does not permit discarding the text to achieve a statute's goals, however laudatory they may be. Wisconsin's restitution statute may serve noble ends, but it does so with specific statutory limits, structure, and process. On both issues before us now, the statutory text is straightforward; we should follow where it leads.

¶110 On the first issue, the restitution statute enables a defendant to raise "any defense" that could be raised in a civil action covering the same losses. Wis. Stat. § 973.20(14)(b) (2017-18).[1] Here, Ryan Muth challenged certain restitution claims by raising a defense that can be raised in a civil action: accord and satisfaction. Muth entered into an agreement whereby three of the victims agreed to release him from all claims they held, including any claims for special damages, in exchange for $100,000. Muth performed on that agreement. There's no need to prove a specific amount of special damages. By definition, Muth's performance on the accord has satisfied the full amount of special damages; that's what accord and satisfaction is. Under the plain language of the law, Muth's accord and satisfaction defense should have precluded further recovery of special damages, and the circuit court's discretionary decision granting those damages should be reversed.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version.

¶111 On the second issue (which would not need to be reached if the accord and satisfaction defense were deemed successful), the circuit court erroneously exercised its discretion because it relied on an improper legal standard. The law defines with precision who is a victim and thereby entitled to seek restitution for their losses; it's a small circle. Under the statute, the spouses of the adult children are not victims in this case and therefore are not entitled to restitution for their losses. And if the losses for the sons-in-law are not compensable through restitution, the daughters do not have any marital property interest in a non-existent lost wages claim. The long and short of it is the legislature granted a legal claim to one marital spouse and not the other. Because the circuit court relied on a rationale that conflicts with what our statutes provide, its exercise of discretion cannot be sustained, nor can its rationale be ignored if we are to apply our standard of review.

¶112 We have no need in this case to resort to the policies and purposes underlying restitution or to incorporate wholly unrelated statutes. The specific terms of the restitution statute do the job. The circuit court applied the wrong standard of law to both issues, and therefore it erroneously exercised its discretion. State ex rel. Wren v. Richardson, 2019 WI 110, ¶39, 389 Wis. 2d 516, 936 N.W.2d 587. I respectfully dissent.

## I. RESTITUTION DEFENSES

### A. Restitution Generally

¶113 Absent a substantial reason not to, a circuit court must order a defendant to pay restitution to any victim of a crime

2

considered at sentencing. Wis. Stat. § 973.20(1r). Thus, payment of restitution is the norm. As relevant here, restitution may be awarded for all special damages that could be recovered in a civil action against the defendant. § 973.20(5)(a). Special damages, in contrast to general damages, constitute "any readily ascertainable pecuniary expenditure paid out because of the crime." Huml v. Vlazny, 2006 WI 87, ¶41 n.11, 293 Wis. 2d 169, 716 N.W.2d 807 (quoted source omitted) (comparing general damages such as pain and suffering).

¶114 For every restitution claim, the victim has the burden to prove the amount of loss suffered as a result of the defendant's crime. Wis. Stat. § 973.20(13)(a), (14)(a). When disputing a restitution claim, the defendant has the burden to demonstrate his financial resources and earning ability, as well as his dependents' needs and earning ability. § 973.20(13)(a), (14)(b).

¶115 The defendant can also assert against a restitution claim "any defense that he or she could raise in a civil action for the loss sought to be compensated." Wis. Stat. § 973.20(14)(b) (emphasis added). Muth asserted two: (a) setoff and (b) accord and satisfaction. When raised against a restitution claim, both defenses are aimed at reducing the bottom-line amount. But each gets there through a different path.

¶116 Broadly, a setoff theory involves dueling claims of indebtedness. The defendant seeks to reduce an amount owed on the plaintiff's claim based on his own claim that the plaintiff is indebted to him from a separate transaction. See Piotrowski v. Czerwinski, 138 Wis. 396, 400, 120 N.W. 268 (1909) (explaining

3

that defendants had an equitable right to set off their own claims of indebtedness against the plaintiff's action on notes the defendants made); see also Setoff, Black's Law Dictionary (11th ed. 2019) ("A debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor."). The restitution statute explicitly recognizes the validity of setoff in a related context. It provides that restitution paid in a criminal proceeding "shall be set off against any judgment in favor of the victim in a civil action" if it arose from the same events. Wis. Stat. § 973.20(8).

¶117 Accord and satisfaction, on the other hand, is an agreement between parties to discharge a disputed claim or debt. Hoffman v. Ralston Purina Co., 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979). That is, the parties agree to a performance different from and in lieu of actual performance on the claim or debt in dispute. See Huml, 293 Wis. 2d 169, ¶36 n.9 ("'Accord and satisfaction' means '[a]n agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance.'" (quoting Black's Law Dictionary (7th ed. 1999) (alteration in original)). The defense comprises two basic elements: the "accord" is the parties' agreement, while the "satisfaction" is performance on that agreement. See Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc., 116 Wis. 2d 95, 112-14, 341 N.W.2d 655 (1984).[2] To ascertain whether these elements are present, a court

---

[2] A preeminent contract law treatise describes the same two elements as such:

4

applies ordinary principles of contract law. Hoffman, 86 Wis. 2d at 453. The accord requires an offer, an acceptance, and consideration, and the satisfaction requires performance complying with the parties' agreement. Id. When both elements are proved, the defense bars actions to enforce the discharged claim. Id.

## B. Conflicting Caselaw

¶118 The circuit court held that Muth failed to prove his setoff defense, and that accord and satisfaction may not be raised as a defense in restitution proceedings.[3] A trilogy of cases have addressed these questions and form the backdrop for our discussion.

¶119 First, in State v. Sweat, we addressed a defendant's argument that "any defense available in a civil action" meant he could raise a civil statute of limitations defense pursuant to Wis. Stat. § 973.20(14)(b). 208 Wis. 2d 409, 413, 561 N.W.2d 695 (1997). We disagreed and concluded that this language "was intended to include only defenses relating to the amount of

---

> [A]n accord and satisfaction consists of two elements: First, the accord or agreement, under which one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, something other than or different from that which the second party is, or considers itself to be, entitled to; and second, the satisfaction, that consists of the execution or performance of the accord or agreement.

29 Williston on Contracts § 73.27 (4th ed.) (footnotes omitted).

[3] The court of appeals affirmed the circuit court's setoff conclusion. State v. Muth, No. 2018AP875-CR, unpublished slip op., ¶22 (Wis. Ct. App. June 6, 2019) (per curiam). Despite full briefing on a preserved issue, the court of appeals did not address Muth's accord and satisfaction argument. See generally id.

5

restitution and not those relating to liability." Id. at 425. This means defendants "should be able to raise substantive defenses, such as mitigation, set-off, or accord and satisfaction, which go to the measure or amount of total restitution." Id. at 424 (emphasis added).

¶120 Two years later, the court of appeals squarely addressed whether the restitution statute permitted a defendant to raise accord and satisfaction as a defense under Wis. Stat. § 973.20(14)(b). State v. Walters, 224 Wis. 2d 897, 591 N.W.2d 874 (Ct. App. 1999). The court of appeals held that the language in Sweat was dicta, and thus did not bind the court. Id. at 904. Instead, the court of appeals said that accord and satisfaction should not be available because criminal restitution "is a remedy that belongs to the State," not the victim. Id. at 904-05.

¶121 Finally, in Huml, this court weighed in yet again in a case involving a civil judgment for unpaid restitution after the defendant was released from probation. 293 Wis. 2d 169. We discussed the evident policy in the restitution statute of making "victims whole without allowing them to receive double recoveries." Id., ¶22. The statutory text, we explained, affords three ways to avoid double recovery. Id. Two dealt with the issues not relevant here, but one was directly on point. Namely, the restitution statute grants the defendant an opportunity to "assert any defense, including accord and satisfaction or setoff." Id. (citing Wis. Stat. § 973.20(14)(b) and Sweat, 208 Wis. 2d at 424). In making that statement, we did not directly overrule

6

Walters' conflicting holding, but we did explicitly state that the law is to the contrary.

¶122 Pronouncements of this court control over those of the court of appeals, just as the most recent pronouncement controls over any earlier ones. Cuene v. Hilliard, 2008 WI App 85, ¶15, 312 Wis. 2d 506, 754 N.W.2d 509. Thus, as we stated in Huml, the law as it stands right now is that accord and satisfaction is an available defense under Wis. Stat. § 973.20(14)(b). Huml, 293 Wis. 2d 169, ¶22. Like setoff, accord and satisfaction goes to the amount of recovery and is meant to prevent a double recovery. And in harmony with the text of § 973.20(14)(b), accord and satisfaction is undoubtedly a defense that could be raised in a civil action covering the same losses as a restitution order.

¶123 Walters's holding that accord and satisfaction may not be raised as a defense is not the governing law. In my view, it is also wrong in its reasoning, contradicts the statute, and should be expressly overruled on this point. Walters rested its conclusion largely on the grounds that a restitution claim belongs to the State, not to the victim. 224 Wis. 2d at 904-05. This meant the victim had no independent authority to agree with the defendant to release the claim, thus defeating the theory of the defense. Id. The court also based its conclusion on the notion that restitution serves the dual purpose of punishing and rehabilitating a defendant. Id. at 904 (referencing Sweat, 208 Wis. 2d at 428-29). As Walters put it, accord and satisfaction conflicts with these purposes——and thus cannot be used——because it

7

acts as a complete defense to an action to enforce a claim. Id. at 904-05.

¶124 The problem is, as worthy as the purposes of restitution may be, this logic does not come from the statutory text. Nothing in the statute indicates that the State itself is the owner of the restitution claim. Nor should it be. See Justice Kelly's concurrence/dissent, ¶¶98-100, 104-05. Restitution is remedial compensation to victims of a crime, and victims must prove the damages they have sustained. § 973.20(1r), (5)(a), (14)(a). The State, in contrast, does not recover restitution. It does not suffer losses compensable through restitution, and the State is not a restitution victim under the law.

¶125 In fact, under the statute, there's no guarantee the State will even be present when restitution is determined. Before sentencing, the district attorney obtains from the victim any information pertaining to claimed losses.[4] Wis. Stat. § 973.20(13)(b). When restitution is resolved at the sentencing hearing, the district attorney is present and represents the victim. § 973.20(13)(c). In other cases, such as here, restitution has to be resolved in a separate hearing and the district attorney's presence is only required if the court so orders (not the case here). § 973.20(14)(a). And even when it

---

[4] In completing that task, the district attorney is to receive full cooperation and assistance from law enforcement, the department of corrections, and any agency providing victims' rights services. Wis. Stat. § 973.20(13)(b). The department of justice also provides technical assistance by way of model forms and procedures for collecting and documenting the relevant information. Id.

8

does appear, the State at most only represents the victim. The State does have a statutory role in advocating for victims, but in no sense does the law represent that it holds the claim.

¶126 The missteps in Walters' reasoning are further amplified when that logic is applied to a setoff defense raised against a restitution claim. Like here, the Walters court also considered a setoff defense premised on a pre-restitution settlement agreement. 224 Wis. 2d at 905-09. In light of its accord and satisfaction holding, one would expect the State's ownership of the restitution claim to similarly preclude use of a setoff defense. After all, a setoff is also based on a transaction that the State plays no part in, one negotiated by the victim and the defendant. But that's not what Walters said. Rather, the court concluded that a setoff defense could be raised. Id. at 906. As Walters left it, a defendant could negotiate to pay off all of the victim's special damages such that the whole restitution amount would be set off. See id. at 906 n.2 (noting there may be cases where a settlement agreement is for the same amount as the victim's special damages). But the same defendant could not challenge a restitution claim based on his agreement with the victim to pay five times as much for the release of any and all damages claims. That makes no sense.

¶127 The clear answer to this confusion is found in the text of the restitution statute, not the uncodified purposes of restitution or the State's supporting role in restitution proceedings. Wisconsin Stat. § 973.20 dictates that restitution is designed to compensate victims for their special damages

incurred as a result of defendants' criminal actions. Between securing the defendant's conviction and entering the restitution order, State actors and institutions play a part in that process. But under § 973.20(14)(b), a defendant may raise "any defense" that could be raised in a civil action covering the same losses. Accord and satisfaction checks this box, which is exactly what we said in Sweat and Huml.

### C. The Court's Decision

¶128 The circuit court relied on Walters to conclude that accord and satisfaction is not an available defense under Wis. Stat. § 973.20(14)(b). A majority of this court acknowledges the problem that Walters created below and now clarifies that any interpretation of Walters that acts to affirmatively bar an accord and satisfaction defense cannot stand. Justice Dallet's concurrence, ¶78.[5]

¶129 But between the lead and concurring opinions, the court brings another problem to the table. Specifically, the court rejects Muth's accord and satisfaction defense on its merits because he failed to prove what portion of the settlement agreement, if any, covered the victims' special damages. Lead op., ¶37; Justice Dallet's concurrence, ¶75. In essence, the court reviews this defense under the same standard it uses to reject Muth's setoff defense. As explained above, however, these defenses are similar, but not the same.

---

[5] In contrast, the lead opinion declines to grapple with any of this. It cites and quotes Walters, but never acknowledges its inconsistency with our cases and the restitution statute itself.

10

¶130 A setoff tries to reduce a claim of indebtedness based on a competing claim of indebtedness. In this context, the defendant argues that he paid for the victim's special damages such that the restitution award for those damages must be reduced in kind. In contrast, an accord and satisfaction defense is based on the defendant paying for the victim's release of any claims based on those damages. The defendant must show that he agreed to pay for the victim's release, and that he performed on that agreement. When proved, the defense bars enforcement of the restitution claim because the defendant has already paid off the special damages debt underlying that claim. The merits or specifics of that debt do not affect the operation of the defense. See Kercheval v. Doty, 31 Wis. 476, 485 (1872) ("[N]o matter what the actual and true merits of their respective claims may have been pending the controversy, the same will not afterwards be inquired into or examined. The settlement is a complete bar to such inquiry and examination.").

¶131 The record here shows that Muth proved his accord and satisfaction defense by producing the settlement agreement at the restitution hearing.[6] The agreement is titled "FULL RELEASE OF ALL CLAIMS WITH INDEMNITY." It states that in exchange for $100,000, the three surviving children would "release, acquit and

---

[6] Interpretation of contractual language is an issue of law we review de novo. Huml v. Vlazny, 2006 WI 87, ¶13, 293 Wis. 2d 169, 716 N.W.2d 807. In so doing, we give the terms used in a contract their plain and ordinary meaning in an effort to ascertain the parties' intent. Id., ¶52. When those terms are unambiguous, we determine the parties' intent based on the four corners of the contract, without consideration of extrinsic evidence. Id.

11

forever discharge" Muth "of and from any or all claims, actions, causes of action, demands, rights, damages, costs, loss of wages, expenses, hospital and medical expenses, accrued or unaccrued claims for loss of consortium, loss of support or affection, loss of society and companionship" arising from that accident. The lead opinion says this is ambiguous, but it seems about as clear as a release can be. Lead op., ¶36. It contains no language drawing any exceptions from this release, which no doubt includes special damages. All three children signed under an acknowledgement that they had read and understood the release, and Muth performed on his end of the agreement. When that payment was made, so was Muth's defense. See Olson v. N.W. Furniture Co., 6 Wis. 2d 178, 182, 94 N.W.2d 179 (1959) ("A claimant's acceptance and retention of a payment which he knows is tendered by an alleged debtor in full settlement of a disputed obligation constitutes an accord and satisfaction.").

¶132 The court concludes that this was not good enough, and that Muth failed to prove that the restitution order resulted in a double recovery. Lead op., ¶37; Justice Dallet's concurrence, ¶75. It's unclear how exactly the court believes Muth could have proved his defense. While it explains he had to show a double recovery, Muth did just that. The restitution order constituted a recovery for the victims' special damages sustained as a result of the underlying accident. Through the settlement agreement, Muth paid the victims for the release of their claims based on the special damages they sustained as a result of the underlying accident. The settlement agreement is the accord, and it provided

12

that Muth's payment satisfied the amount owed for special damages (whatever that amount may be). No specific amount needed to be or even could have been shown; it was a substituted performance. That's what accord and satisfaction is.

¶133 The circuit court rejected both of Muth's defenses and awarded $34,869.42 in restitution to the three children.[7] I agree that Muth's setoff defense was correctly denied. The terms of the settlement agreement do not specifically allocate the $100,000 against any particular damages. Without proof of the special damages amount, Muth did not meet his burden to prove how much the restitution amount should be set off. Huml, 293 Wis. 2d 169, ¶22.

¶134 But the circuit court, relying on Walters, concluded that accord and satisfaction is not an available defense in contravention of Huml and the restitution statute itself. Therefore, its discretionary decision to reject Muth's accord and satisfaction defense, which should have prevailed, was based on an incorrect legal standard and should be reversed. LeMere v. LeMere, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789 ("[T]he failure to apply the correct legal standards is an erroneous exercise of discretion.").

---

[7] The circuit court's restitution order included an amount ($8,401) for the deceased victim's brother, who himself was a restitution victim but not a party to the settlement agreement. In raising his defenses, Muth has never challenged this portion of the restitution order.

13

## II. RESTITUTION VICTIMS

¶135 Because it upholds the rejection of Muth's defenses, the court also addresses an issue regarding specific restitution awards for the deceased victim's sons-in-law. While accepting Muth's accord and satisfaction defense would moot this issue, I address it nonetheless as the court's analysis further divorces our restitution jurisprudence from the statutory text and misapplies our standard of review.

¶136 As part of its order, the circuit court awarded restitution for the lost wages of the deceased victim's two sons-in-law. Muth contested these amounts on the grounds that the sons-in-law are not victims under the restitution statute. The circuit court rejected this argument, determining that the lost wages also belonged to the deceased victim's daughters (who themselves were statutorily permitted to recover restitution) by way of our marital property laws. This is an erroneous application of the relevant statutes.

¶137 Restitution may be granted for losses suffered by victims. Wis. Stat. § 973.20(1r). And for purposes of restitution, victims are defined under Wis. Stat. § 950.02(4). See State v. Gribble, 2001 WI App 227, ¶71, 248 Wis. 2d 409, 636 N.W.2d 488. Generally, a victim is someone "against whom a crime has been committed," with some expansion to guardians and similar individuals for children, those adjudicated incompetent, and those physically or emotionally unable to exercise their rights. § 950.02(4)(a)1.-3., 5. If the person against whom a crime was committed is deceased, the definition of victim expands, but only

14

in a limited fashion. A victim in that situation is one "who resided with the person who is deceased" or is a "family member" of the deceased victim. § 950.02(4)(a)4. But a family member is not a vague term left for judicial exposition. It is a statutorily defined term as well; it means a "spouse, minor child, adult child, sibling, parent, or legal guardian." § 950.02(3).

¶138 Thus, unless they lived with the deceased victim, in-laws are not victims for purposes of restitution. The legislature could have defined family members to include spouses of the persons listed, but it did not. Reading the list as a whole, the itemized victims represent immediate family members of the deceased victim, but not their spouses or children or other relatives. As evident from the statutory text, restitution is available only for a narrow subset of individuals. Victims are not anyone and everyone who suffered losses. In fact, when a person against whom a crime was committed is not deceased, her children are not victims and receive no recovery, despite the fact that they may suffer losses resulting from the crime. The most reasonable reading of the statute is that only those who the legislature defined as victims may have their losses covered.[8] Accordingly, under the relevant statutes, the sons-in-law are not entitled to have their losses compensated via the mechanism of criminal restitution to victims.

---

[8] This conclusion flows from the canon of construction known as _expression unius est exclusion alterius_, which instructs that the expression of a term or terms implies the exclusion of others. State v. Dorsey, 2018 WI 10, ¶29, 379 Wis. 2d 386, 906 N.W.2d 158 (citations omitted).

15

¶139 Instead of letting the statutes speak for themselves regarding who victims are, the lead opinion evades this straightforward conclusion by roping in our marital property statutes.[9] Lead op., ¶55. I see no principled reason for straying

---

[9] The circuit court went down this same path and used our marital property statutes as the basis for its decision. If that route is incorrect, our standard of review requires reversal. LeMere v. LeMere, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789 ("[T]he failure to apply the correct legal standards is an erroneous exercise of discretion."). This also means we cannot skip over the circuit court's legal basis. Reviewing an exercise of discretion requires an evaluation of the legal standard applied.

For her part, Justice Dallet concludes that restitution could not be ordered for the lost wages under Wis. Stat. § 973.20(5)(a) and rejects integration of our marital property statutes to overcome that barrier. But Justice Dallet still upholds the awards by claiming they were proper exercises of discretion under Wis. Stat. § 973.20(13)(a)5., a statute that was not relied upon by the circuit court nor raised by the parties below or before us. Justice Dallet's concurrence, ¶83. In other words, Justice Dallet finds that the circuit court applied an incorrect legal standard yet still permissibly exercised its discretion under a statutory provision that it did not use. This is not how we review discretionary decisions.

16

from the relevant statutes to create an indirect route for restitution that could not otherwise be obtained. Certainly nothing in the text suggests such a link. The court of appeals said as much in State v. Johnson, a decision that the lead opinion does not overrule here. 2002 WI App 166, ¶23, 256 Wis. 2d 871, 649 N.W.2d 284 (rejecting use of marital property laws to create an indirect route for restitution where Wis. Stat. §§ 950.02(4)(a) and 973.20 provided no direct route for a stepparent's recovery of lost wages).[10]

¶140 Moreover, the lead opinion's use of our marital property statutes has its own flaws. Its conclusion rests on the daughters

---

Further, Justice Dallet's tour down the trail of Wis. Stat. § 973.20(13)(a)5 opens up a precarious path. That provision is found after a list of four factors a court must consider before ordering a restitution award: the victim's losses, the defendant's financial resources and earning ability, and the defendant's dependents' needs and earning ability. § 973.20(13)(a). The fifth and final item on this list allows the court to consider "[a]ny other factors which the court deems appropriate." § 973.20(13)(a)5. In essence, this is the catchall provision for judicial determinations as to what amount of restitution should be ordered. Justice Dallet's application appears to treat § 973.20(13)(a)5. as something that can catch all kinds of discretionary restitution awards. One wonders what the limits of this might be. For example, what other persons who are not statutorily entitled to restitution can nonetheless receive it under this view of § 973.20(13)(a)5.? Justice Dallet tries to close the door on this line of thinking by explaining that future courts must order restitution in a manner consistent with our restitution statute as a whole. Justice Dallet's concurrence, ¶85 n.7. I agree, but I think we should do that in this case too.

[10] The court of appeals reversed the circuit court's restitution order on this issue, concluding that Johnson controlled the outcome. Muth, No. 2018AP875-CR, unpublished slip op., ¶27 & n.4 ("We express no opinion as to whether, in the absence of Johnson, the State's policy and legislative intent arguments, or any other argument, would have merit.").

17

(who are themselves victims for purposes of restitution) holding a marital property interest in their husbands' lost wages. This theory does not work because that interest does not exist.

¶141 To have a marital property interest, a spouse must first have property. Wis. Stat. § 766.31(1) ("All property of spouses is marital property . . . ."). The marital property chapter defines "property" as "an interest, present or future, legal or equitable, vested or contingent, in real or personal property." Wis. Stat. § 766.01(15). Thus, every marital property interest traces back to a property interest.

¶142 At stake here is a property interest in the lost wages of the sons-in-law. But the sons-in-law do not have restitution claims of their own. And although our statutes provide that income earned by spouses constitutes marital property, Wis. Stat. § 766.31(3)-(4), that does not mean spouses also have an undivided interest in income that has not yet been earned. Nothing else in the chapter even hints at an interest of this kind. Cf. § 766.31(7m) (referring to marital property based on lost income that has been converted to damages through a personal injury claim of a surviving spouse).

¶143 There can be no marital property interest that the daughters can assert here without first showing that the sons-in-law have an independent interest in their own lost wages. Because the sons-in-law are not victims and do not have a compensatory interest in their own lost wages, the daughters have no marital property interest that could be asserted in the first place.

18

¶144 Thus, while restitution should not have been ordered based on Muth's accord and satisfaction defense, the circuit court's award of restitution based on the lost wages of the sons-in-law should be reversed for this independent reason as well.

### III. CONCLUSION

¶145 Those convicted of crimes should, so far as it is possible, make their victims whole. But as commendable as that policy goal may be, we must not disregard our duty to actually interpret and apply the text of the relevant statutes, no matter how broadly and liberally we are to construe them. Across two issues, the court fails to apply our standard of review and elevates the policy underlying our restitution statute above the statutory text itself. The text is the law, and I would follow it. I respectfully dissent.